CHANCERY.

# Brassfield *vs* Walker, &c.

### ERROR TO THE BOYLE CIRCUIT.

*Case* 26.

*October* 2.

Case stated.

*Vendor and vendee.    Rescission.    Division of Lands.*

JUDGE MARSHALL delivered the opinion of the Court.

BRASSFIELD purchased from Saunders 148 acres of land,
at the price of $5,000, paid about $2000 in hand, and re-
ceived a conveyance.  Saunders being indebted to Walker,
in part for the purchase of portions of the same land, Brass-
field, by agreement of the parties, executed two notes to
Walker for so much of the purchase money of the 148 acres
as had not been paid down, and gave him a mortgage upon
the land to secure the payment.  And Walker executed
to Brassfield a covenant to convey, through Christopher
Lillard, 32 acres of the same land to Brassfield, the legal
title being supposed to be in Lillard.  And Walker being
indebted to Christopher Lillard, for this and other land,
Brassfield, some time after his purchase from Saunders,
executed his note, with security, to Christopher Lillard,
which was received in discharge of the amount due to
him from Walker, and the same amount was credited as
payment on one of Brassfield's notes to Walker.

Brassfield being in the undisturbed possession of the
entire tract of 148 acres, recovered a judgment against
Walker for failing to convey the 32 acres, and Lillard re-
covered a judgment against Brassfield on the note execu-
ted to him.  To injoin this latter judgment, and obtain
a rescission of the entire contract, on the ground of defect
of title, Brassfield filed his bill against all the other par-
ties above named.  And Walker, by cross bill, injoined
the judgment of Brassfield against him, and he also sued

to foreclose his mortgage. Before these bills were filed, C. Lillard and wife had conveyed the 32 acres to Walker, and Walker and wife had made a deed for the same to Brassfield; and many other deeds having been produced in the progress of the cause, some of them made after its commencement, the Court, on hearing, dismissed Brassfield's bill and dissolved his injunction without damages or costs, and decreed to Walker the relief which he sought.

Waiving the question as to the effect which, under the circumstances above stated, a rescission of the entire contract should have upon the judgment obtained by Christopher Lillard, and also the question whether there might not have been a partial rescission, if there were a defect of title as to a part of the land; we are of opinion that there was no ground for a rescission to any extent, and that the decree is substantially correct.

1. In the first place Brassfield, without fraud or misrepresentation, and so far as appears, without mistake of fact, received from Saunders a deed of conveyance with warranty, and was entitled also, to the benefit of other warranties, under which he obtained and still holds the quiet possession of the whole land; and although as Saunders had become a non-resident, the Court might, if there were a palpable defect of title, and a well grounded apprehension of loss, enjoin the collection of the purchase money until the danger was removed, or even rescind the contract, it certainly would not indulge the purchaser in mere technical objections, affecting at most but small portions of the title, threatening no interruption of his possession, and of which he should be presumed to have been aware before his purchase; much less should it encourage him in searching out defects and stimulating the assertion of dormant and doubtful claims with the view of defeating a fair and equal contract, the benefits of which he is enjoying in safety. In the present instance the effort of the complainant to stir up a litigation for his land has failed, and we think his attempt to point out any substantial defect of title, involving danger of loss, has been alike unsuccessful.

*A vendee who has received a conveyance and been let into possession, and is in the undisturbed enjoyment of his purchase will not be heard for a rescission on account of dormant and doubtful claims which he may stimulate others to assert against his title.*

BRASSFIELD
*vs*
WALKER, &c.

The title of a vendor presumed to be valid by length of possession coupled with an interest as heir and vendee's bill for rescission dismissed.

2. The objections to the title are two fold: First, on the ground that as to between 36 and 40 acres, James Lillard, under whom the title is claimed, had not title himself. And secondly, on the ground that even if he had title, there was no effectual division of the land after his death, and no release of title among his children and their descendants, by which the vendors in this case could effectually convey the 148 acres, by metes and bounds, so as to exclude therefrom the title of the other parties entitled under James Lillard. As to the first objection, it appears that in 1801, John Lillard, the father of James and of nine other children, of whom five were *femes covert* and the others males, devised a part of his home tract, ascertained to be 116 acres, to his wife during life or widowhood, if she chose to remain on it; but upon her marriage or removal, it was to revert to his estate and be disposed of as thereinafter directed. The subsequent direction is, that his executor should sell the home tract. After his death his widow, who was a second wife and the mother-in-law of James Lillard, remained upon the land devised to her for two or three years, James Lillard also residing there. But in the year 1804, she moved from it to a place in the neighborhood, belonging to James Lillard, and in 1809 or 1810, sold off her effects and went to another county to reside with another son-in-law. From 1804 until his death in 1837, James Lillard remained upon the 116 acres, using and claiming it as his own, as his descendants and their alienees have done until the present time. The children of John Lillard, two of whom were his executors, all resided in the State, and all except one, within twenty miles of the land. The widow died about twenty five years before the cause was heard, and more than twenty before it was brought. It was proved by one of the daughters of John Lillard, that she had sold her interest to James, and had understood that the other heirs had sold their interest to him. Other witnesses say substantially the same. And during the long period since 1804, there has been an entire acquiescence in the claim and possession of James Lillard, except that one of his married sisters, who died about twenty five years ago, is said to have said, that she got

little or nothing for her interest, and perhaps had not conveyed it, and that her children ought to sue for it. They have failed, however, to sue, although their father has been dead many years, and although Brassfield seems to have assured them that they could recover. Now it is evident, that upon the removal of John Lillard's widow in 1804, either the executors or heirs had a right to the possession, and it is scarcely possible that the great lapse of time has not barred the remedy of all who were then entitled, even if James Lillard had not acquired their claims. But there is a presumption amounting to a reasonable certainty, and especially when fortified by the proof, that he did buy out the other heirs of his father, and about the time when he took possession. And even if these purchases were not obligatory upon all the *femes* at the time, still the male heirs were bound, and were moreover, subject not only to the presumption arising from lapse of time, but to the running of the statute, which absolutely bars the claim of themselves and their heirs. From the great lapse of time, the presumption must also be indulged against the *femes covert* and their heirs, that there was a valid conveyance, or that their claim is barred, unless in those cases in which it is shown that neither they nor their heirs could have sued until within twenty years. And even in such case, (of which, however there is no attempt to prove more than one or two, and these are but imperfectly made out,) it might be well questioned whether, as their right was held jointly with other heirs who are barred, their own remedy would not also be barred. But even if there were a valid subsisting claim to portions of the 116 acres, outstanding in the heirs of some of the daughters of John Lillard, still as the claims of the sons and their heirs are not only barred, but must be presumed to have been transferred to James Lillard, and as these claims, (as will be hereafter shown,) are all concentrated in the grantors, by or under whom the conveyance is made to Brassfield, and as the claim of James Lillard to the entire tract of 116 acres is also concentrated in the same hands, even the successful assertion of claim by the five married daughters of John Lillard or their heirs, would not probably involve the ul-

BRASSFIELD
vs
WALKER, &c.

Where there had been a division of land amongst heirs by County Court Comm'rs, though not strictly legal, long acquiesced in, and a vendee had received title with warranty and was in the enjoyment of his purchase, the chancellor refused to rescind, especially as the alledged defect in the conveyances extended only to a small part of the land sold.

timate loss to Brassfield, of any part of the 36 or 40 acres now in question, and which would be more than covered by the interests of four of John Lillard's sons.

With regard to the second objection which is founded upon the alledged invalidity of the division made between the devisees or heirs of James Lillard, by County Court Commissioners, it is sufficient to say that although that division may not have been, in itself, valid or sufficient to secure the titles of the parties interested as heirs or devisees of James Lillard, yet it has been so recognized by all of these parties who were capable, and by those who had a right to act in the premises for others under disability, that its defects are no longer available. At most this confirmation of the division is defective as to only two thirds of one eighth part of the entire real estate of James Lillard, being the interest of four of the six children of his daughter, Mrs. Willis, to whom lot No. 4, not covering any part of the land now in question, was assigned in the division. If the proceedings by which this interest of two thirds of one eighth was sold under a decree as the estate of the infants, and purchased by Walker be invalid, and if the four infants may still assert an undivided interest in the whole estate, to the extent of two thirds of one eighth, which is one twelfth, still as all the other claimants, except the wives of Saunders, Walker, C. Lillard and Wm. Hamilton, whose wives were daughters of James Lillard, have conveyed their interests to these four persons recognizing the division, and as the titles of these four persons and their wives have, by regular conveyances, been concentrated in Brassfield, to the extent of the 148 acres purchased by him from Saunders, and as the 148 acres do not comprise one half of the entire landed estate of James Lillard which was divided, there is no danger that the one twelfth which the four Willises might claim, will ever be thrown upon the 148 acres; nor is it shown that there is any probability of any claim ever being asserted by them even if they are not barred by the proceedings referred to, The bare possibility that Brassfield may be put to some trouble in maintaining his title under the deed, of which there is no probability, furnishes no ground for a rescission, and especially under the cir-

cumstances of the purchase as above referred to. But as the deeds by which the title has been thus fortified, have some of them at least, been made since the filing of the bill, and as C. Lillard, whose judgment was enjoined, was involved in the question of title, we cannot say that either damages or costs should have been awarded to him upon the dissolution of the injunction.

Wherefore, the decree is affirmed.

*Harlan & Craddock* for plaintiff.