CASE 125—EQUITY—NOVEMBER 10.

# Logan and wife v. Bull, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. When a vendor sues to enforce an executory contract for the sale of land, averring that he is able, ready, and willing to convey the title, and tendering a conveyance, the vendee must either aver that the vendor has no title, or if the title is defective, he must point out the defects, that they may be remedied or the contract rescinded.

2. A defect in the title may exist that can at once be remedied, hence the necessity of an express denial of any title in the vendor or a statement of facts showing that the title is defective.

3. A continued adverse possession of the ground for fifty years, coupled with written evidences of title, although defective, will vest the occupant with a perfect title.

4. The title of appellants is sufficient to enable them to make conveyance in accordance with their bond to the decedent.

Logan and wife v. Bull, &c.

5. The chancellor will, where time is not of the essence of the contract, permit the vendor to supply the defects in his title, if he can do so in a reasonable time, so as to comply with his contract.

6. The modern rule is, that although the title may be in the wife, when the contract is made with the husband, if the latter is ready to comply by tendering such a conveyance as will pass the title, the chancellor will adjudge a specific performance.

W. J. LISLE AND BARNETT & NOBLE FOR APPELLANTS.

1. The appellants are not required to show a title beyond the reach of all possible question. Moral certainty is all that can be required.

2. Appellants and those under whom they claim have held the adverse possession of the lot of ground for fifty years.

3. The court below should have quieted the title of appellant as against the heirs of Ward. (2 Story's Eq., sec. *a*736; 2 Parsons on Cont., 567; Fry's Specific Performance, secs. 297, 298; White & Tudor's Leading Eq., 92; 14 Johnson, 485; 16 Maine, 92; 31 How., 411; 4 Greenleaf, 350; 1 Newland on Cont., 154; 2 Story's Eq., secs. 735, 736; Gen. Stat., 520; Young v. Paul, 2 Stockton's Chan., 402; Clark v. Rein, 12 Grattan, 98; Getchell v. Jewett, 4 Eng. Chan., 300; Roseberg's ex'r v. Sterling's heirs, 27 Pa., 292; Farley and wife v. Palmer, 20 Ohio State Reports, 223; Salisbury v. Hatcher, Young & Collyer's Reports, 66 (21 Eng. Chan.); Cook's adm'r v. Hendrick, 4 Mon., 402; Moorman v. Board, 11 Bush, 135; Nantz v. Bailey, 3 Dana, 112; Fry on Spec. Perf., secs. 573, 581; Cotton v. Ward, 3 Mon., 305; 1 Stat. Law, 448; Ogden v. Grant, 6 Dana, 473; Prather v. McDowell, 8 Bush, 47; Clark v. Hunt, 3 J. J. Marsh., 557; Edwards v. Woolfolk, 17 Ben. Mon., 381; Perry on Trusts, pages 73, 82; Findley v. Patterson, 2 Ben. Mon., 78; Roberts v. Roberts, 7 Bush, 100; Coleman v. Walker, 3 Met., 67; Butler v. Cheatem, 8 Bush, 594; Craddock v. Tyler, 3 Bush, 360; Buckner v. Bush, 1 Duvall, 394; Richards v. Richards, 10 Bush, 618; Simmons v. McKay, 5 Bush, 25; Bullitt's Civ. Code, secs. 763, 517, 518, 837, 391; Hays v. Tribble, 3 Ben. Mon., 107; Helm v. Bentley, 1 Met., 510; May v. Marshall, 2 Littell, 147; Riney's heir v. Riney, 1 Ben. Mon., 69; Holliday v. Hickman, 6 Mon., 376; Gen. Stat., page 502–527; Myers' Code, secs. 429, 554, 428; Moss v. Henderson, 17 Pa., 379; Morgan's heirs v. Morgan, 2 Wheaton, 290; 1 Wheaton, 179; Levy v. Huber, 3 Watts, 367; Young & Collyer, 21 Eng. Chan.; Tyree v. Williams, 3 Bibb, 366; Burrill's Law Dic., word "Tender;" Myers' Code, sec. 884; Bayse v. Beard's ex'r, 12 Ben. Mon., 587.)

W. P. D. BUSH FOR APPELLANTS.

1. The answer of John Bull admits the cause of action set forth in the petition, and fails to present any defense thereto.

Logan and wife v. Bull, &c.

2. The rule is, that in an action for specific performance, where the vendee desires to put the vendor upon an exhibition of his title, he must, allege that the vendor has no title; or if the vendee asserts that the vendor's title is defective, he must specify in his pleading the particulars wherein he claims that it is not good. (Davis v. Dicus, 7 Bush, 4; Grant v. Wasson, 6 J. J. Mar., 618; French v. Howard, 301; Duvall v. Parker, 2 Duv., 182.)

3. The doctrine of mutuality does not apply to this case. (Tevis v. Richardson, 7 Mon., 655; Fry on Specific Performance, sec. 293; Sugden on Vendors, 312; 104 Mass., 407; 20 Ohio, 223; Prather v. McDowell, 8 Bush, 46.)

4. The court will presume after the lapse of fifty years that Ward conveyed the land to Cotton. (McCoun v. Edwards, 6 B. Mon., 208; Beckwith v. Kouns, 6 Ib., 222; Brassfield v. Walker, 7 Ib., 97; Jarboe v. McAtee's heirs, Ib., 27; Baler v. Cox, 9 Ib., 316; Lyne v. Bank of Ky., 5 J. J. M., 545; Gentry v. McMinnis, 3 Dana, 381; Vettitoe v. Jones, 6 J. J. Mar., 515; French v. Howard, 3 Bibb.)

5. The burden of showing that Wm. Cotton's children have the right to an appeal from the judgment of the Woodford circuit court is upon appellees. (1 Greenleaf on Evidence, sec. 81; 2 Ib., sec. 362; 1 Phillips on Evidence, 823; 1 Met., 110; May v. Marshall, 2 Litt., 147; 1 B. Mon., 69; 6 Mon., 376; 1 Mar., 22; 3 Mon., 196; 1 J. J. Mar., 596; 5 Mon., 181.)

6. Appellant's title has been perfected by adverse possession. (3 Wash., 163; 31 Maine, 384; 4 Allen, 426; 35 Penn., 191, 205; 35 Miss, 504; 28 Ib., 129; 1 W. & Serg., 494; 39 N. H., 103; 29 Penn., 262; 5 Md., 256: 16 Mo., 273; 39 Vermont, 365; 3 Zab., 155; 2 Hilliard on Real Prop., 179; 3 Wash., 163; 1 Sug. on Vend., 584; Smith on Real Prop., 450; Holmes v Gay, 6 Bush, 50; 4 Bush, 634.)

JNO. ROBERTS AND I. & J. CALDWELL AND WINSTON FOR APPELLEES.

1. Appellees aver that Emma P. Logan has no title to the part of the land claimed by Mr. S. Logan, and no sufficient title is shown.

2. It is not necessary for appellee, in resisting specific execution of the contract, to point out defects in appellant's title. It is the business of appellant, who seeks to force the title upon an unwilling purchaser, to show that it is perfect.

3. The decree of the Woodford circuit court was erroneous against the infant heirs of Wm. Cotton.

4. It is a rule of equity that, to enable either party to compel a specific performance of a contract for the sale of land, it must be mutually binding on both parties. (Davis v. Dicus, 7 Bush; Calvin v. Duncan, 12 Bush, 101; Tomlin v. M'Chord, 5 J. J. M., 136; Barnett v. Higgins, 4 Dana, 567; Shields' heirs v. Bryant, 3 Bibb, 525; Searcy's

Logan and wife v. Bull, &c.

heirs v. Reardin, 3 Bibb, 528; Beeler v. Bullitt, 4 Bibb, 12; Searcy's heirs v. Morgan, 4 Bibb, 97; Letcher's heirs v. Letcher, 2 Mar., 158; Carneal *et al.* v. Sthreshley, 1 Mar., 471; Newman v. Kendall, 1 Mar., 235; Iron's exec. v. Crist, 3 Mar., 143; Pope v. Lemaster, 5 Littell, 80; Shields v. Craig, 1 Mon., 72; Darby's heirs v. Richardson, 3 J. J. Mar., 544; Jones' heirs v. Adair, 4 J. J. Mar., 220; Daniel, &c., v. Hannigan, 5 J. J. Mar., 49; Johnson v. Johnson, 1 Dana, 369; Chalfant v. Monroe, 3 Dana, 35; Chandler v. Commonwealth, 4 Met., 63; Civil Code, sec. 65; Tevis' representatives v. Richardson, 7 Monroe, 657; Civil Code, sec. 579, subdivision 5; Same, sec. 884; Helm v. Bentley, 1 Met., 510; Riney v. Riney, 1 B. Mon., 69; Carr v. Callaghan, 3 Littell, 376; Campbell v. Johnson, 4 Dana, 179; McKay v. Simmons, 5 Bush, 25; Review of New Code, sec. 837; Civil Code, sec. 426; Same, sec. 429; Long v. Montgomery, 6 Bush, 395; Brownfield v. Dyer, 7 Bush, 505; 1 Stanton's R. S., 281, secs. 20, 21, and 22; 2 Stanton's R. S., 229, sec. 17; General Statutes, 258 and 587; Herman on Estoppels, 235, sec. 15; Bigelow on Estoppels, 245 and 490; Robinson v. Robinson, 11 Bush, 178; Lewis v. Henderson, 3 Littell, 361; Tevis v. Richardson, 7 Mon., 698; Lewis v. Herndon, 3 Littell, 360; Tevis v. Richardson, 7 Mon., 658; Hightower v. Smith, 5 J. J. Mar., 543; McKay v. Carrington, 1 McLean, 50; Garnett v. Macon, 2 Brock., 185; Colcock v. Butler, 1 DeSau., 307; Jackson v. Edwards, 22 Wend., 498; Jackson v. Ligon, 3 Leigh, 161; Fry on Specific Performance, 329; Price v. Griffeth, 1 De G. M. & G, 80; Fry on Specific Performance, 198; Duvall v. Myers, 2 Mary. Ch. Dec., 401; Bodine v. Gladding, 21 Penn. (9 Harris), 50; 1 Johnston's Ch'y Reports, 379, and Fonbl. Eq., 48, and note; Boucher v. Vanbuskirk, 2 A. K. Mar., 345; Barbour v. Pate, 2 T. B. Monroe, 8; Newland on Contracts, 154; Smith v. Turner, 50 Indiana, 367; Richmond v. Gray. 3 Allen, 26; Fry on Specific Performance, 347; Griffin v Cunningham, 19 Grat., 571; Freely v. Burkhardt, 51 Penn., 281; Luckett v. ———, 31 Mo., 54; Collin v. Smith, 1 Head, Tenn., 251; Petty v. Roberts, 7 Bush, 419; Barret v. Godshaw, 12 Bush, 593.)

HAYDEN M. YOUNG FOR THE INFANT DEVISEES OF JOHN BULL.

1. There is no mutuality in the contract of sale. It was impossible to compel Mrs. Logan to make conveyance of the land against her will.

2. It is the duty of appellant to clear his title of all defects before he can compel appellees to accept it.

3. Appellees have the right to demand such a title as will not only enable them to hold the land, but to hold it in peace. (Robinson v. Robinson's trustee, 11 Bush, 174; Johnston and wife v. Jones, 12 B. Mon., 326; Mosby v. Partee, 5 Heiskell (Tenn.), 26; Story's Equity Jurisprudence, section 1391; Tevis' reps. v. Richardson's heirs, 7 Monroe, 660; Pulliam v. Pulliam's heirs, 4 Dana, 123; Fry on Specific Perform-

ance, 164, 198, 392; Hannah v. Phillips, 1 Grant's Cases (Pa.), 253; Young v. Paul, 10 N. J. Eq. (2 Stockton), 401; Bronson v. Cahill, 4 McLean, 19; Phillips v. Berger, 8 Barb., 528.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This action was instituted in the Louisville chancery court on the 1st of December, 1873, by the appellants, Logan and wife, against John Bull, for the specific execution of a contract evidencing the sale of a lot of ground and the improvements on the northeast corner of Fifth and Market streets, in the city of Louisville.

The contract is dated on the 11th of April, 1873, and by its terms the appellants, Logan and wife, by their agents, Buckhanon & Rogers, sold the lot and its improvements to John Bull in consideration of $48,000, one third of that sum to be paid on the delivery of the deed, one third in twelve months, and one third in twenty-four months, both the deferred payments to bear six per cent. interest, and to be secured by a lien on the property conveyed. The appellants were to convey free of all encumbrances and taxes, with a covenant of general warranty, with the exception of some liens then on the property, and they were to be assigned and transferred to Bull without recourse. The contract was to be fully executed so soon as the attorney of Bull could examine the title, *and this was to be done by the first of May*, 1873, the appellant being entitled to the rents until the delivery of the deed and payment of the $16,000, &c. The contract was signed by John Bull, and by John Logan and Emma P. Logan, his wife, by Buckhanon & Rogers, their agents.

Bull died during the pendency of the action, and his widow and devisees are the appellees. It is alleged in the petition that the appellants are able, willing, and ready to

Logan and wife v. Bull, &c.

make a good and perfect title to the property sold, and a conveyance in accordance with the contract is tendered, with the additional allegation of an offer on the part of the appellants to comply with their contract by tendering the conveyance on the 1st of May, 1873, and a refusal to accept the deed by the vendee, John Bull. The allegations of the petition are negatived by the answer, except the offer to perform on the part of the appellants and an averment that the appellants are not able to comply with their contract, and a call made on the latter to exhibit their title.

It is insisted by counsel for the appellant that in order to entitle the vendee in a case like this to demand an exhibition of his vendor's title, he must allege either an entire want of title, or point out the particular defects of which he complains. Cases may be found prior to the adoption of the Code sustaining a different view of the question raised, and that the vendee has the right to demand an exhibition of title, without specifying the particular objection to his vendor's title. He admits, in effect, that his vendor has some title, but that the title is defective; or if not, he claims the right to inspect the title for the purpose of ascertaining whether it is such a title as he should be compelled to accept. This is bad pleading, and must necessarily conduce to great inconvenience and delay where the vendor is compelled to exhibit his title in order that his vendee may be placed in a condition where he can point out the defects, if any exist. The vendor having alleged his readiness and ability to convey, and in this case tendering a deed, the vendee must either allege that he has no title, or, if the title is defective, must point out the defects that they may be remedied, or the contract rescinded if the defect is incurable and such as entitles the vendee to that character of relief.

A defect in the title may exist that can be at once reme-died, or an apparent defect that, when pointed out, can in nowise affect the title, therefore the necessity of an express denial of any title in the vendor, or a statement of facts showing that his title is defective.

Both parties, however, during the progress of the case, re-garded the issue as to title fully made, and the appellants have shown a derivation of title, and exhibited the conveyances under which they claim, which, when connected with their possession, and the possession of those under whom they claim, they insist gives them a perfect title. It is not every defect in a title that will authorize the chancellor to rescind the contract. In this case there was a continued adverse possession of the lot sold by the appellants and those under whom they claim for the period of near fifty years, and that possession accompanied by a paper title, and, so far as appears from the record, no assertion of claim has ever been made adverse to either the appellants' possession or title. Nor has the possession been constructive by reason of the title under which the appellants and their vendors claim, but during the entire period there has been an actual possession and enjoyment of the property.

In the year 1806 the trustees of the then town of Louisville conveyed a lot of ground, including the lot in controversy, to one Patton. In the year 1818 Charles Cotton, under whom these appellants and their vendor derived title, by a proceeding in the Louisville chancery court, recovered this lot or the title from Patton's heirs, and a conveyance was made to him in that case, properly acknowledged and ad-mitted to record. One McConnell had, prior to that time, conveyed the lot to Charles Cotton, and the latter, finding the title in Patton's heirs, instituted the action already alluded

to, in which he alleged that the conveyance was made by
McConnell to Patton to secure the latter in his liability as.
the surety of McConnell, and was intended to operate as a
mortgage only. In the year 1817 Charles Cotton conveyed
the lot to David L. Ward, and afterwards made another
conveyance to Ward in 1821, in consideration of $12,000,
four thousand of which was paid in hand. This latter con-
veyance was made by reason of his not having the legal title·
when the deed of 1817 was executed. In the year 1824
Ward conveyed the lot to Stephen Ormsby and others in
trust for the payment of certain debts, and for other pur-
poses mentioned in the deed. This trust deed acknowledged
an indebtedness to Cotton of eight thousand dollars, and by
its terms Ward could dispose of the land or invest others
with that power. These trustees, Ormsby and others, under
the deed of 1824, conveyed all their right and title in this.
lot of ground to Charles Cotton in the year 1826, at which
time Cotton entered into the possession, and he and his.
vendees have continuously occupied the ground since that
date, and were in the possession by their tenants when this.
action was determined. Ward seems not to have united
with the trustees in the conveyance to Cotton, and this con-
stitutes the defect in the title of which the appellees complain..
The heirs of Ward were made defendants to this action and
called on to assert title, but no claim was made, and none
could have been successfully maintained after the lapse of
half a century, by Ward's heirs or any of the beneficiaries
in the trust deed. The lost link in the chain of title, if such
a fact exists, is supplied by a continued occupancy that
would bar any recovery by an adverse claimant. The lapse
of time may give a perfect title, and while the mere occu-
pancy and claim by the vendor for the period of fifteen or·

twenty years may not be sufficient to authorize the chancellor to say that the vendee must accept his title under a covenant that he will make a good and perfect title, there can be no doubt but an adverse possession for such a period as has been shown in this case, coupled with the written evidences of title, although defective, would vest the occupant with a perfect legal title.

By section 4, General Statutes, chapter 71 (the same provision in Revised Statutes), "the period for which an action for the recovery of real property may be brought shall not in any case be extended beyond thirty years from the time at which the right to bring the action first accrued to the plaintiff or the person through whom he claims by reason of any death, or the existence or continuance of any disability whatever." Independent of any title of record in this case, the adverse possession would have the effect of a conveyance, and the chancellor, when informing himself as to the nature of the title, can have no doubt as to the ability of the parties to make such a conveyance as will fully protect the purchaser against any adverse claimant. (Fry on Specific Performance, 348; Brassfield v. Walker, 7 B. Mon., 97; Jarboe v. McAtee's heirs, 7 B. Mon., 279.)

It is also maintained by counsel for the appellees that the defects in the Woodford county record, by which Mrs. Logan claims to have been invested with title, as well as her brother, Charles Cotton, of whom appellant Logan purchased, are such as endanger the rights of the purchaser in this case if he is required to accept the conveyance. This action in the Woodford circuit court was instituted by the administrator and heirs of Charles Cotton for a settlement of the estate and a division of his lands. William Cotton, one of the children of Charles Cotton, died, leaving infants who

were under age at the rendition of the judgment in that
case. Process was regularly served on the infants, and a
guardian *ad litem* appointed, a judgment rendered, and a
division had without an answer by a guardian *ad litem*. The
report of a division was made by commissioner properly
appointed and confirmed by the court, deeds made, and the
parties placed in possession of their respective lots.

This judgment of partition was rendered in the year 1864,
and the period of near 14 years having elapsed since that
judgment, it is scarcely probable that the partition would or
could be disturbed. How old the children were when the
judgment was rendered does not appear, and, under the
circumstances, the *bare possibility* that an appeal may be
taken, and, when taken, the judgment reversed, and when
reversed, that the partition may be shown to be unequal, and
for that reason set *aside*, will not authorize a rescission at
the instance of the vendee or prevent a specific execution
at the instance of the vendor. Similar objections might be
made in almost every case where a judicial proceeding is
relied on for the purpose of transmitting the title. The
case of Lewis' representatives against Richardson's heirs is
unlike this. In that case the land was patented to Tanner
in 1785, and Tanner sold to Hart without any conveyance.
It is alleged that the land was divided between Hart's heirs,
but no division is shown or deeds made; and further alleged
that the Harts sold to Oldham, and no conveyance is pro-
duced, and that Oldham sold to Richardson, and the latter
held without any written evidence of title. Claimants existed
also who labored under disabilities, such as coverture and
infancy, and this court held that a possession of twenty
years did not vest the occupant with such title as his vendee
should be required to accept. The title of the appellants in

this case should have been held sufficient to enable them to convey in accordance with the terms of their bond to Bull.

It is further contended by the appellees that a specific execution of the contract should be denied, because the title to a part of the lot is in the *feme covert*, and as the chancellor has no power to compel *her to convey*, there is such a want of mutuality in the obligation as to render the contract invalid.

The general doctrine is, that a contract incapable of being enforced against one party, that party is equally incapable of enforcing it against the other.    (Fry on Specific Performance, page 198.)

It has often been held under this rule, that a party at the time he makes his contract, although not invested with such a title as he undertakes to convey, may compel a specific execution where time is not of the essence of the contract. Cases may be found, and language used by some of the elementary writers on the subject, conducing to the conclusion that, in the absence of such a title in the party at the time of making the contract as he contracts to convey, the vendee may rescind, and a specific execution will be denied; but the equitable rule as now settled by nearly all the authorities on the subject is, that when the contract is required to be performed, if the party is able to convey, and tenders his deed, the contract will be enforced, although his title was defective at the date of the contract; and if not able to convey at the time of filing a bill for rescission, if time is not of the essence of the contract, the chancellor will permit the vendor, if he can do so within a reasonable time, to supply the defects in his title, so as to comply with his contract.    (Dressel v. Jordan, 104 Massachusetts.)

In this case the husband and wife, living at the time in the state of Missouri, authorized their agents in Louisville, by telegraph and by letter, to make the sale to the ancestor of the appellees on the terms mentioned in the writing. The obligation to perform the contract was as binding on Logan as on Bull, and the fact that the title to a part of the lot was in the wife, who could not be compelled to convey, is immaterial. If in a reasonable time Logan was ready to make good the title, and particularly when he has not failed to make a title on the demand of the vendee, the purchaser should be compelled to accept it. The ancestor of the appellees knew when he made this purchase that the title to a part of the lot was in the wife, and that the chancellor could not coerce a conveyance, and whether he possessed this knowledge or not, the obligation on the husband to convey was as binding on him as the obligation on the vendee to pay the money.

The ancient practice in equity was to decree the husband to perform his contract in such a case where, as Lord Elden says, it was usually impossible for him to perform. The modern rule on the subject is to adjudge a specific performance, although the title may have been in the wife when the contract was made with the husband, if the latter is ready to comply by tendering such a conveyance as will pass the title. If the wife consents to convey, and does convey, the vendee has no right to complain.

The appellees further say that no tender of a conveyance was made by the appellants or an offer to comply with their contract; that the contract was in fact abandoned, and appellee's ancestor has invested his money in other real estate, and appellants are now seeking to enforce the agreement:

Logan and wife v. Bull, &c.

because of the decline in the marketable value of such property.

A tender is distinctly averred in the original petition and not denied in the answer, and the offer to file an amended answer placing in issue this allegation was refused by the court, and that very properly, as there was no reason assigned why the averment was not denied in the original pleading. It is evident from the proof that appellants tendered a deed in accordance with their agreement, and that the contract was about being executed by the payment of the money and the acceptance of the deed, when a suggestion was made as to some defect in the title, and, at the instance of Bull, further time was given that he might investigate the title. The witnesses for the appellants say that a tender of the conveyance was made, and that fact may have escaped the attention of counsel, whose minds were on the questions arising as to the alleged defects in the title; and whether so or not, all parties concede the readiness of the appellants to convey, and agree that the delay was made to enable Bull to satisfy himself in regard to the title. It is not alleged that the contract was abandoned, nor is there any testimony in the case conducing to such a conclusion. The vendee, long after the time at which the deed was to have been delivered and the money paid, expressed his desire to own the property, and the appellants at no time abandoned their right to enforce the contract.

As the appellants were ready to comply, and further time given Bull that he might perform his part of the contract, it was the latter's duty to have notified appellants of his purpose not to accept the conveyance. This action was instituted within eight months after the date at which the conveyance was to have been made, and when the delay

was made at the instance of Bull, that he might satisfy him-self as to the condition of the title, the delay in bringing the action is not so unreasonable as to evidence an abandon-ment of the contract, and although the pecuniary condition of the vendee may have changed within that time, or other investments made of his money, it is to be attributed to his own conduct, and not to the action of the appellants.

It is also proper to remark, that nearly all the authorities relied on by counsel, where it has been held that a delay of ten months in making the title, or a less time, is such laches as deprives the vendor of the right to enforce the contract, are cases where *time* was held to be of the essence of the agreement.  After a careful consideration of this record, we are satisfied the appellants were entitled to have their con-tract enforced, and the judgment below is reversed, and cause remanded, with directions to render a judgment en-forcing the contract.  By its terms the appellants expressly reserve the right to the rents until a deed is made and the sixteen thousand dollars are paid.  The rents, therefore, will be set off against the interest up to the date of the judgment.

The appellants, on tendering a conveyance, with a clause of general warranty, properly executed and acknowledged by husband and wife, and an assignment of the leases, if any, with an offer to surrender the possession if no leases exist, will be entitled to a judgment for the whole of the purchase money.  The chancellor, by an interlocutory order, if the appellees desire it, should give a reasonable time to enable them to raise the money.

Judgment reversed, and cause remanded, for further pro-ceedings consistent with this opinion.

To a petition for rehearing—

JUDGE PRYOR DELIVERED THE RESPONSE OF THE COURT.

We have again carefully considered the points suggested by counsel as affecting the title the appellees are called on to accept. We are satisfied the title is such as requires that the contract should be enforced. Mrs. Logan is before the court *now*, and is tendering a deed, and how she is to complain of the proceedings in the Woodford court we cannot well see.

We have extended the opinion on the subject of pleading, being of the opinion that a correct rule of pleading requires an absolute denial of title or a statement of facts pointing out the defects of which the vendee complains.

Petition overruled.