CASE 54—PETITION EQUITY—NOVEMBER 3.

# Smith, &c., v. Cansler.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

83   367
89   421
83   367
93   187
83   367
104. 801

1. WHERE TIME IS NOT OF THE ESSENCE OF A CONTRACT for the sale of land, the inability of the vendor to make a good title at the time of the contract, or at the time agreed upon for performance, will not entitle the vendee to a rescission, the vendor's title being subsequently made perfect; and even though the vendor is not able to comply with his contract when the suit for rescission is instituted, yet if he can perfect his title within a reasonable time the court will give him an opportunity to do so. In this case, however, the property agreed to be conveyed being the property of the vendor's wife, and the improvements having been destroyed by fire before a sufficient deed was tendered, the vendee can not now be required to accept a deed and pay the purchase money, the vendor having ample time before the fire to make the deed, which, by the contract, was to have been made on a certain day, and furnishing no sufficient excuse for not doing so.

2. A DE FACTO OFFICER is one who exercises the duties of an office, claiming the right to do so under some commission or appointment.
One who had been a deputy clerk in the county during the first term of the clerk continued to act as such without re-appointment, after his principal had entered upon his second term. *Held*—That he was not a *de facto* officer.

FELAND AND WOOD FOR APPELLANTS.

1. The modern rule is, that although the title of the vendor was defective when the contract was made, or even at the date of the institution of the suit for a rescission, yet, if time is not of the essence of the contract, the Chancellor will give the vendor an opportunity to perfect his title, if he can do so within a reasonable

time. (Logan, &c., v. Bull, 78 Ky., 618; Woodson v. Scott, 1 Dana, 471; Craig v. Martin, 3 J. J. Mar., 53; Cotton v. Ward, 3 Mon., 313.)

2. The facts of this case show that time was not of the essence of the contract.

3. The vendee, by concurring in the proceedings for remedying the defect in the title, waived his right to rely upon the want of mutuality in the contract. (Fry on Specific Performance, section 293; Salisbury v. Hatcher, 2 Y. & C. C. C., 54; Hoggart v. Scott, 1 Russ. & M., 293.)

4. The deputy clerk who first took the acknowledgment was a *de facto* officer, and, therefore, his acts as to third persons should be regarded as binding. (Wilson v. King, 3 Litt., 459; Justices v. Clark, 1 Mon., 86; Rice v. Commonwealth, 3 Bush, 17; Hoglan v. Carpenter, 4 Bush, 90.)

J. I. LANDES FOR APPELLEE.

1. The rule requiring that contracts to be specifically enforced must be mutual applies to this case. (Fry on Specific Performance, section 286.)

2. Time is of the essence of the contract sued on. (Page v. Hughes, 2 B. Mon., 441; Magoffin v. Holt, 1 Duv., 95; Jones v. Noble, 3 Bush, 695.)

3. Time. although not ordinarily considered in equity *essential*, is always regarded as *material*, so that a party who, without reasonable excuse, is in default as to time, will be denied the remedy of specific enforcement where injury results to the other party against whom it is sought. (Pomeroy's Eq. Juris., section 732; Woodson's Adm'r, &c., v. Scott, 1 Dana, 470; McKay v. Carrington, 1 McLean, 50.)

4. The deeds tendered October 25th and 30th were not effectual, because they were not acknowledged before a legally authorized officer. (General Statutes, chapter 24, sections 15 and 21.)

5. The deed tendered October 25th, before the fire, contained no sufficient description of the property, and the tender was, therefore, not good. (Williams v. Abrahams, 3 Bush, 187.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee, Polk Cansler, being in possession of the property as the tenant of the appellant, G. W. Smith, they entered into the following contract:

"This contract, made and entered this 21st day of October, 1882, between G. W. Smith and Polk Cansler, witnesseth:

"That said Smith has sold to said Cansler *his* livery, feed and sale stable, on corner of Russellville and Virginia streets, in the city of Hopkinsville, for the sum of ($3,500) thirty-five hundred dollars—deed to be made, payment made and notes executed on Monday next.                   G. W. SMITH,

(Signed)                    "POLK CANSLER."

The property, in fact, belonged to the wife of G. W. Smith, the appellant S. E. Smith; and while her husband testifies that he both acted for himself and as her agent in making the trade, yet he admits that he did not disclose the agency.

The appellee says that he had rented of the husband, and supposed that the property belonged to him when he made the purchase. No deed was tendered until, as appellant says, the following Tuesday, while the appellee says that it was Wednesday; and he is confirmed in this statement by other testimony. No reason is given for the delay, or why it was not done on Monday. It doubtless resulted from mere neglect upon the part of appellants.

The one so tendered was signed, and had been acknowledged, by both of the appellants before one B. M. Harrison, as a deputy of the county court clerk. It appears that the latter officer was then serving a second term; that during his former one Harrison had been appointed and qualified, not as an office deputy, but as one in the country, and that he had never been appointed or qualified as a deputy since the clerk entered upon his second term. No objection, however, was made to the deed upon this score, owing, beyond question, to the fact that all the

parties to it supposed that Harrison was a regular deputy. It was received by the appellee, and at once taken to his attorney for examination, who objected to it for insufficiency of description of the property, and because of some other supposed slight formal defects, and it was then, and upon the same day, returned to the appellant, G. W. Smith, with the request that another deed be made. He received it for this purpose; and from the circumstances, the receiving of the deed by Cansler was evidently an acceptance of it, only upon the condition that it was satisfactory to him after an examination by his attorney. The stable was destroyed by fire, without appellee's fault, upon the night of Wednesday, October 25th, and before a second deed had been prepared, the only reason given for the delay by the appellants being that the draftsman of the first deed could not be found.

Upon October 30th following another deed was tendered to the appellee, but it had also been acknowledged before Harrison, and the appellee refusing to accept it or take the property, this action was brought on November 2, 1882, to compel him to do so. During its pendency another deed, properly executed and acknowledged by the appellants before a regular or legal deputy clerk, was tendered to the appellee, and it is now insisted that the deed which was tendered before the fire, and also the second one that was tendered before the bringing of the suit, were acknowledged before a *de facto* officer, and were, therefore, sufficient; but even if mistaken in this, it is next urged that time was not of the essence of the con--

tract, and as a sufficient deed was tendered before the *hearing* of the cause, that the appellee should have been compelled to accept it, and a decree rendered for a specific execution of the contract of October 21, 1882, although the owner of the property had not joined in it.

The rescission of a contract, or its specific performance through a court's power, is not a matter of right in a party.

It is to be exerted when the court, in the exercise of a reasonable discretion, finds that general rules or principles will not, under the circumstances of the particular case, furnish an exact measure of justice.

Mutuality of obligation is in general necessary to the validity of a contract, and it is a general rule that, in order to be binding, it must be enforceable by either party. If, however, one is not invested with such a title as he undertakes by his contract to make to a purchaser; yet, if time be not of the essence of it, and he is able to make title when the time for performance arrives, and tenders the deed, then it will be enforced, although his title was defective at the date of the contract; and in such a case if a rescission be asked by the other party, and the vendor is not able at the time of the institution of a suit for this purpose to comply with the contract, yet if he can perfect the title within a reasonable time the court will afford him an opportunity to do so. (Logan and Wife v. Bull, &c., 78 Ky. Reps., 617.)

We think that this may now be regarded as the settled equitable rule, although expressions may be

found in some of the elementary books to the effect that a rescission will be granted or a specific execution denied in case one had not such a title at the time of contracting as he bound himself to convey.

As a sufficient deed was tendered before the *hearing* of the cause, it follows that the appellants were entitled to enforce the contract under the above rule, allowing, as we must, that the deeds acknowledged before Harrison did not bind the wife, unless some circumstance has been shown which makes this case an exception to it, and brings it within some qualification of the rule. It is virtually admitted, as is indeed beyond question, that Mrs. Smith was not bound by the contract of October 21, 1882.

If she were, then there is no trouble in hand. It is urged, however, that the deed which was tendered before the fire did bind her, owing to its having been acknowledged before a *de facto* officer, as is claimed. Such an officer is one who exercises the duties of an office, claiming the right to do so under some commission or appointment.

Harrison was acting from his own will and by self-appointment only. Moreover, section 21, chapter 24 of the General Statutes, provides that "a deed of a married woman, *to be effectual*, shall be acknowledged before some of the officers named in the preceding sections, and lodged in the proper office for record."

No estoppel as to her existed. The so-called deed was no more than a contract as to her. She was not *sui juris*, and the appellee could not have enforced it as against her. If the equitable title had passed and been in the appellee when the fire occurred,

then, beyond question, the appellants would have been entitled to the relief they are now seeking.

We now return to the question whether they are entitled to it because, before the final hearing, they tendered a sufficient deed to the property. Between the time of doing so and the contract of October 21, 1882, the stable had been destroyed by fire without the appellee's fault. The appellants were in fault in not having a sufficient deed made and tendered to the appellee before the property was materially changed in its value or character. It is true that this did not result from any improper motive, but from mere neglect; but this does not affect the rule which equitable considerations dictate should be applied under such circumstances.

It has been held that where there is a want of mutuality in the obligation, time is generally essential as well in equity as at law (Page v. Hughes, &c., 2 B. Monroe, 439; Magoffin v. Holt, 1 Duvall, 95); and where there has been unnecessary delay or neglect in complying with it upon the part of the party seeking to enforce it, and in the meantime the character of the property has materially altered, a court of equity, in the exercise of a discretion given to it because strict law or general principles would not "furnish any exact measure of justice between the parties," should not look with favor upon the applicant.

It was said in the case of Woodson's Adm'r v. Scott, 1 Dana, 470, that "the demands of equal justice would seem, therefore, to require the Chancellor to overlook delay on the part of the vendor, which

is the result of mere supineness, *and which has not prejudiced the vendee in any ascertainable mode or degree.*"

Story says: "Time is not generally deemed in equity to be of the essence of the contract, unless the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the contract. It is true that courts of equity have regard to time so far as it respects the good faith and diligence of the parties; but if circumstances of a reasonable nature have disabled the party from a strict compliance; or if he comes, *recenti facto*, to ask for a specific performance, the suit is treated with indulgence, and generally with favor by the court; but then, in such cases, it should be clear that the remedies are mutual; *that there has been no change of circumstances affecting the character or justice of the contract;* that compensation for the delay can be fully and beneficially given; that he who asks a specific performance is in a condition to perform his own part of the contract; *and that he has shown himself ready, desirous, prompt and eager to perform the contract.*" (2 Story's Equity, section 776.)

The appellant, Smith, has been guilty of laches, and furnishes no sufficient excuse for the delay in making the deed, which, by the contract, was to have been made upon a certain day; there was ample time to do so before the destruction of the stable; he has not shown himself "ready, desirous, *prompt* and *eager* to perform the contract;" there had, before a sufficient deed was tendered, been a

"change of circumstances affecting the *character* or *justice* of the contract;" and its enforcement would now be oppressive to the appellee.

Judgment affirmed.