## Buckhorn Coal & Lumber Company v. Lewis.

(Decided January 17, 1930.)

JOUETT & METCALF and M. C. BEGLEY for appellant.

T. G. LEWIS and WM. LEWIS for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—
Reversing.

On April 18, 1917, the appellee and his wife executed and delivered to C. B. Gross a writing whereby they bargained and sold and convenanted to convey to him, "by good and sufficient deed of general warranty of title and free from all incumbrances or clouds," a described tract of land containing 1,100 acres more or less, situate on the waters of Wolfe creek of Cutshin in Leslie county, Ky., for the consideration of $11 per acre, of which the sum of $1,000 was paid in cash; the balance to be paid in two equal installments, the first as soon as the title could be examined, survey made, and deed executed, and the other to be made in one or two months from the date of the deed. It was further provided that Gross should have six months from the date of the contract to elect whether he would purchase the land upon the terms provided, and if within that time he should give Lewis notice of his intention to purchase, the writing should then become a binding contract of sale and purchase upon the parties. It was further provided that if Gross, within the six months, gave the notice of his intention to purchase, he should have a reasonable time from the date of notification in which to make examination of title and survey the land. Shortly after execution of the contract, Gross assigned it to appellant, and within the six months therein provided for, appellant gave notice of its intention to purchase the land as provided in the contract. Between the giving of that notice and October 16, 1918, an examination of the title disclosed that 402 acres of the land was embraced within a patent for 40,400 acres dated November 4, 1873, granted to C. O. Lockard, which was superior to any patent held by appellee on that 402 acres. Thereupon the appellant took from the owners of that patent a deed in which

appellee and his wife joined, and paid for that much of the land. Some time thereafter, but just when is not shown, appellee tendered to appellant a deed for the remainder of the land and demanded payment of the balance of purchase money, but appellant declined to accept the deed. On July 24, 1925, appellee instituted this suit against appellant for specific performance of the contract, alleging that the remainder of the land contained 708 acres, and there was due him therefor the sum of $5,488. Appellant resisted specific performance on the ground that appellee's title was defective, and, in its answer and counterclaim set up the defects relied on, sought a rescission of the contract, and a judgment against appellee for the amount claimed to have been paid to him, alleging further that it had paid to him on the 708 acres the sum of $3,149.18, for which it sought judgment with interest from October 21, 1925. In his reply appellee admitted that as to a portion of the 708 acres his title was purely possessory, and as to another portion of it, admitted that the title thereto had been conveyed to him and his first wife (then dead) jointly, and that upon her death her interest descended to her eight children, but alleged that he had, since making the contract, acquired the interest of all these children except the interest of two grandchildren who were then infants, and which interest was but a small fraction of the entire boundary, and as to this interest he was willing for appellant to retain that proportion of the purchase money until he had acquired the title thereto or would execute to appellant a bond to acquire and convey that undivided interest. A demurrer to this reply was overruled. On final hearing the court adjudged specific performance by appellant; found that the appellee had good title to the land except as to an undivided interest of one-sixth of one-eighth of one-half of a tract of approximately 160 acres embraced in the boundary as to which it was adjudged appellant might withhold that proportion of the purchase money until appellee procured and conveyed title to that undivided interest to appellant; further found that the area of the entire tract embraced in the contract was 1,110 acres, from which should be deducted 402 acres previously conveyed and 162 acres belonging to Kentucky River Coal Corporation; found the balance of purchase money to be $4,638.82, for which appellee was awarded judgment with interest from July 16, 1924, the

date of the deed tendered appellant. Complaining of this judgment the defendant has appealed.

The first ground relied on for reversal of the judgment is that the court erred in overruling the demurrer to appellee's reply. It is insisted that since appellee admitted he did not, at the time of filing his reply, have title to the interest of two of his grandchildren, he did not have such title as he had obligated himself to convey, and could not therefore perform his contract. This contention, however, is without merit. In Logan v. Bull, 78 Ky. 607, this precise contention was made, and in denying it the court said: "The general doctrine is, that a contract incapable of being enforced against one party, that party is equally incapable of enforcing it against the other. Fry on Specific Performance, p. 198. It has often been held under this rule, that a party at the time he makes his contract, although not invested with such a title as he undertakes to convey, may compel a specific execution where time is not of the essence of the contract. Cases may be found, and language used by some of the elementary writers on the subject, conducing to the conclusion that, in the absence of such a title in the party at the time of making the contract as he contracts to convey, the vendee may rescind, and a specific execution will be denied; but the equitable rule as now settled by nearly all the authorities on the subject is, that when the contract is required to be performed, if the party is able to convey, and tenders his deed, the contract will be enforced, although his title was defective at the date of the contract; and if not able to convey at the time of filing a bill for rescission, if time is not of the essence of the contract, the chancellor will permit the vendor, if he can do so within a reasonable time, to supply the defects in his title, so as to comply with his contract." See also Smith v. Cansler, 83 Ky. 367; Posey et al. v. Kimsey, 146 Ky. 205, 142 S. W. 703; Maynard v. Lowe, 231 Ky. 258, 21. S. W. (2d) 285.

The next ground of complaint, and one of the defects in title relied on by appellant in its answer and counterclaim, is that on January 11, 1915, appellee executed and delivered to William Lewis, E. G. Eversole, and J. H. Lewis, a writing by which he sold and conveyed to them all the coals, oil, gas, and other minerals, including rights incident to the mining and removal thereof, together with such of the standing timber 14 inches and under as

was necessary for mining purposes, on a tract of land containing 2,000 acres situated on Wolf, Coone, and Cutshin creeks, in Leslie county, Ky., described as follows: "Beginning on the lower end of said farm next to the lands of Sammuel Maggard; thence running up Wolf creek on both sides of stream so as to include the lands on both sides of said creek owned by Lewis, and continuing up said stream a sufficient distance so as that when all the lands owned on both sides of said stream by him, including that on the waters of Coon and Cutshin creeks, and below said point, shall amount to 2,000 acres."

The land sold to appellant is described in the contract as "adjoining the lands of George Day, Tennis Coal Company and others," and bounded "on the north by lands of William Lewis, same boundary sold to Williams Lewis and others, the mineral land." It is insisted that, inasmuch as the northern line of the boundary sold appellant is the southern line of this 2,000 acres, this line must be established before any conveyance can be made to appellant. Appellee, however, contends that this line has been established, and relies upon the survey of the 2,000 acres, the location of its south line, the map thereof as made by William H. Lewis, a surveyor, and the testimony of Mr. Lewis. This witness shows that he surveyed the exterior lines of the land claimed by appellee in 1911, and that in 1915, after appellee sold the minerals in 2,000 acres of his boundary to William Lewis, E. G. Eversole, and J. H. Lewis, he completed the survey shown on his map "by locating the various patents inside of said boundary for J. H. Lewis, William Lewis and E. G. Eversole, in order to ascertain the acreage of mineral land they were buying of the whole boundary." This witness does not say, nor does any witness say, that the boundary laid off by him for Lewis, Eversole, and Lewis contains exactly 2,000 acres or more or less than 2,000 acres, and for aught the record shows the south line which is the northern line of the tract sold appellant, as fixed by Mr. Lewis and shown on his map, has been given a purely arbitrary location, and which is, in no sense, binding upon Lewis, Eversole, and Lewis. Under their purchose they are entitled to 2,000 acres. In order to include that area, the boundary might have to be extended south of the line as fixed by the surveyor, in which case the boundary sold to appellant

would be proportionately reduced. Appellant is entitled to have that line clearly and definitely fixed. This cannot be done as between those who are now parties to this action. William Lewis, E. G. Eversole, and J. H. Lewis, or their assigns, should be made parties by appropriate pleadings, and after the surveying necessary for the purpose and taking of proof to establish the facts, this line between their 2,000 acres and the land sold appellant should be established, and its location definitely fixed.

3. The next ground of complaint is that appellee's title to the 708 acres which he seeks to have appellant take and pay for is defective, in that:

(a) A portion of the land is embraced by patent No. 15,750 granted to James Templeton, and appellee does not have title thereto.

(b) That a portion of the land is embraced within patents Nos. 7326, 7327, and 7328 granted to Robert Napier, and that appellant does not connect his title with either of those patents.

(c) A portion of the land is embraced within patent No. 16,947 granted to Elijah Smallwood, and appellant's title does not connect therewith.

(d) A portion of the land is embraced in a deed executed to appellee and his first wife, Amy Lewis, jointly, by James Pennington August 17, 1888; and a portion is embraced in a deed similarly executed by Levi Shepherd, October 31, 1890; that Amy Lewis is dead and her one-half interest in these two tracts descended to her children and heirs at law; and that appellee is unable to convey her interest therein.

In addition to these alleged defects which were set up in the answer and counterclaim it is now urged in brief:

(e) That the Lockard patent covers the entire boundary claimed by appellee, and that the deed executed by the owners of that patent to appellant does not embrace the 708 acres in controversy.

(f) That a portion of the land is embraced in a deed executed to appellee and his first wife, Amy, jointly, by William Pennington, and that appellee has not acquired the interest of her heirs at law therein.

It is shown by the testimony of appellee and his surveyor that patent No. 15,750 granted to James Templeton, and the four patents granted to Robert Napier, do not cover or embrace any portion of the land described

in the contract or in the petition. There is no contradiction of this testimony. On this record, therefore, these facts must be taken as established and it be held that neither of those patents covers any portion of the land in controversy.

'While appellee has no chain of recorded conveyances connecting him with patent No. 16,947 granted to Elijah Smallwood, testimony in his behalf by a number of witnesses conduces to establish the fact that appellee, and those under whom he claims, have had the actual adverse possession of the land embraced by this patent. under color of title of record by inclosures, clearings, and cultivated fields aggregating more than 50 acres, for more than 50 years, claiming to the full extent of his color which, according to the evidence, embraces the whole of the patent boundary; and there is no testimony to the contrary. That one may perfect title to a tract of land under color of title describing the land sufficiently for it to be identified, by an actual adverse holding and possession for the statutory period, is too well settled to need citation of authority. It is equally well settled that a title which has vested under an actual adverse holding by lapse of time and the statute of limitation, is such a title as one may be required to accept under a contract similar to that in this case. In Watkins v. Pfeiffer, 92 S. W. 562, 564, 29 Ky. Law Rep. 97, it was said:

"We recognize the rule that, as a general proposition, the granting of a decree for specific performance of a contract is a matter of discretion with the chancellor; but this is a legal, not an arbitrary, discretion, and where it appears, as in this case, that the vendor is possessed of an indefeasible title under the statute of limitations, we see no reason why the court should refuse him a decree specifically enforcing his contract of sale, any more than it would refuse to grant him damages for a breach of the contract. Of course, this reasoning would not apply if there was any rational doubt as to the complete bar of the statute of limitations, or if there was any doubt that the vendee possessed the evidence required to show the lapse of time necessary to constitute a title by possession. But in this case the answer of the appellee affirmatively alleges that his vendor, and those under whom he claims, had actual, hostile possession of the land as against the whole

world for 50 years. If this be true, he has an indefeasible title to the property in question, and there is no legal reason why the appellee should not be required to carry out his contract.''

And in Logan v. Bull, supra, it was said:

''The lapse of time may give a perfect title, and while the mere occupancy and claim by the vendor for the period of fifteen or twenty years may not be sufficient to authorize the chancellor to say that the vendee must accept his title under a covenant that he will make a good and perfect title, there can be no doubt but an adverse possession for such a period as has been shown in this case, coupled with the written evidences of title, although defective, would vest the occupant with a perfect legal title. By section 4, General Statutes, chapter 71 . . . 'the period for which an action for the recovery of real property may be brought shall not in any case be extended beyond thirty years from the time at which the right to bring the action first accrued to the plaintiff or the person through whom he claims by reason of any death, or the existence or continuance of any disability whatever.' Independent of any title of record in this case, the adverse possession would have the effect of a conveyance, and the chancellor, when informing himself as to the nature of the title, can have no doubt as to the ability of the parties to make such a conveyance as will fully protect the purchaser against any adverse claimant. Fry on Specific Performance, 348; Brassfield v. Walker, 7 B. Mon., 97; Jarboe v. McAtee's heirs, 7 B. Mon, 279.''

The only evidence in this case concerning appellee's possession of the Elijah Smallwood patent is that given by him and witnesses introduced in his behalf. If true—and it is uncontradicted—it is amply sufficient to establish the fact and to warrant a finding that he has matured his title to the land in the Smallwood patent by adverse possession for more than 30 years, beyond which time it is provided an action for its recovery may not be maintained. Ky. Stats., sec. 2508.

In view of the fact that appellant assailed the title on the ground that appellee had no title to this Smallwood patent, if evidence on the question to the contrary

of that for appellee existed, it is at least reasonable to assume it would have been introduced. In its absence the court can entertain no doubt upon the present state of the record that appellee had matured title to this patent boundary by the lapse of time and his actual adverse possession of it, or of his ability to make such a conveyance of it as will fully protect the purchaser against any adverse claimant.

It is shown by the testimony of appellee and by the exhibits filed therewith that his first wife, Amy Lewis, was the mother of 12 children. Four of these children died without issue. Three others died leaving issue. Five of the children survive, and these five have conveyed their undivided interest in the land of their mother to appellee. The children of those who died leaving issue have all conveyed to appellee their undivided interest in the land of their grandmother, except one of them, Wilson Lewis, son of Felix Lewis, who took by descent one-sixth of one-eighth of one-half of approximately 160 acres. At the time the proof was taken (June, 1928), it was shown that Wilson Lewis was an enlisted man in the United States Army and was out of the state of Kentucky, but that he would be 21 years of age in November, 1928. If now living, he is more than 21 years of age, and it would seem that there is now nothing to prevent appellee from acquiring this undivided interest, and taking a deed therefor, by which appellant can be vested with all the title and interest of Amy Lewis, and with all the undivided interests which descended to her heirs at law upon her death. Inasmuch as this case will have to be reversed, it will conduce to the interests of both parties to permit the appellee to acquire this outstanding undivided interest of less than 2 acres, to the end that it may be conveyed to appellant. This is consonant with the rule, hereinbefore referred to, to the effect that if at the time of performance plaintiff tenders a good title, he may recover in an action of this sort although he perfects his title pending the action, and that where time is not of the essence of the contract, the court will afford him a reasonable opportunity to perfect his title. Logan v. Bull, supra; Buford's Adm'r v. Guthrie, 77 Ky. (14 Bush) 690; Finnegan v. Summers, 91 S. W. 261, 28 Ky. Law Rep. 1180; Collins v. Park, 93 Ky. 6, 18 S. W. 1013, 13 Ky. Law Rep. 905; Hisle v. Witherspoon, 42 S. W. 842, 19 Ky. Law Rep. 1013.

The claim that the Lockard patent covers the 708 acres controversy cannot be relied on. It was not made in the court below. The rule is that in order to entitle a vendee to demand an exhibition of the vendor's title, he must allege either an entire want of title or point out the particular defects of which he complains. Logan v. Bull, supra; Collins v. Park, supra. No complaint of any outstanding title under the Lockard patent was made in the answer and counterclaim. Nor was there any complaint in the court below of any defect in appellee's title under the deed from William Pennington to appellee and his first wife, Amy Lewis. However, this latter defect exists solely because of appellee's failure to acquire the undivided interest which descended to Wilson Lewis, aforesaid, and it can doubtless be cured, as hereinbefore pointed out, on the return of the case to the lower court.

In his deposition given on November 18, 1927, appellee testified that he had a deed from Chrisley Lewis, another son of Felix Lewis and brother of Wilson, above referred to, conveying his undivided interest in the lands of his grandmother, Amy Lewis. He was asked to, and said that he would, file that deed as a part of his deposition marked "Exhibit No. 17." It was not filed, and the record does not show whether it has been recorded. If not recorded, it should be, and then filed with the record.

4. The judgment allowed to appellee interest from July 16, 1924. This was error. Appellee is not entitled to interest except from the time he has acquired, and tenders to appellant a deed conveying, the title he undertook to convey. He did not have such title on July 16, 1924, nor when the judgment appealed from was rendered. He will be entitled to interest only from the time he tenders to appellant a deed conveying title perfected as herein pointed out.

5. It is recited in the judgment that the tract of land described in the petition contains 1,110 acres from which there is excepted a boundary of 162 acres owned by Kentucky River Coal Corporation and formerly owned by Slemp Coal Company, and the boundary of 402 acres which has heretofore been conveyed to the appellant by B. M. Yeager, trustee, and appellee. This would, of course, leave in the boundary to be conveyed to appellant 546 acres instead of 708 acres, but the amount of money therefor adjudged appellee is the bal-

ance due for 708 acres of land. It is alleged in the petition that the boundary contains 1,110 acres after deducting the 162 acres belonging to Kentucky River Coal Corporation. It is clear, therefore, that the judgment divests appellant of 162 acres, while at the same time requiring it to pay therefor. On the return of the case this error will be corrected to conform to the facts.

Wherefore judgment is reversed, with directions to make William Lewis, E. G. Eversole, and J. H. Lewis, or their assigns, parties to this action, and to grant appellee a reasonable time in which to acquire the undivided interest of Wilson Lewis, and for proceedings consistent with this opinion.