## National Finance Corporation v. Robinson and Fidelity and Columbia Trust Company, Trustees, etc.

(Decided January 20, 1922.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Specific Performance—Limitation Over—Forfeitures—Consideration for Conveyance.—Limitation upon the use of property devised or donated will generally create a forfeiture if it is violated, followed by a reverter of title to the donor or his successors in title, but such consequences do not follow when there is a valuable consideration for the conveyance, in which case the limitation upon the use will be construed as a covenant and not as a condition subsequent, unless the language creating it is so clear as to admit of no other reasonable construction than the creation of a condition subsequent.

2. Adverse Possession—Property Limited to Adverse Use.—When property held under a title limiting its use is devoted to an entirely different purpose the use immediately becomes adverse to the limited one and a right of action therefor at once accrues to those who may be interested in the enforcement of the limited use; therefore, if the adverse use continues for the statutory period of limitations the right to proceed therefor is barred.

3. Specific Performance—Adverse Possession.—Defendant in an action to enforce specific performance can not be made to accept a doubtful or an encumbered title, but in the absence of stipulations to the contrary he may be made to accept a title acquired exclusively by adverse possession.

4. Specific Performance—Adverse Claimants—Parties.—In actions for specific performance it is competent for the plaintiff to make adverse claimants to the title of the property defendants in the suit and to thereby perfect his title which, if done, entitles him to an enforcement of his contract.

5. Limitation of Actions—Action for Breach of Broken Covenant.—
The right of action for a breach of a broken covenant is not,
under the provisions of section 2525 of the Kentucky Statutes,
barred until the expiration of the full period of limitation after
the removal of the disability of plaintiff, which existed at the time
of the breach, and such an action is not one governed by the pro-
visions of 2506 of the statutes, which is one exclusively for the re-
covery of real property and which would apply if the stipulation
was a condition subsequent and not a covenant.

BURKE & LAWTON for appellant.

HOWARD B. LEE and PETER, LEE, TABB & KRIEGER for ap-
pellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellees, Robinson and Fidelity & Columbia Trust
Company, as trustees of the Protestant Episcopal Or-
phan Asylum of Louisville, seek by this action, filed by
them against appellant and defendant, National Finance
Corporation, to compel it to sign and accept a fifty (50)
year lease, upon terms therein stated, of some real prop-
erty in the city of Louisville located on the west side of
Fifth street between Chestnut and Broadway streets and
fronting on Fifth street ninety-three (93) feet and run-
ning back one hundred and fifty-nine (159) feet. It
was alleged in the petition that the orphan asylum, for
which plaintiffs were the duly appointed, qualified and
acting trustees, owned the lot and that plaintiffs had
prior thereto executed an option for the lease, which de-
fendant had accepted, and that the tendered lease was in
conformity with the terms of the option, all of which de-
fendant admits. It defends against a judgment for
specific performance, however, upon the ground that the
title of the asylum to the property is such as to prevent
it or its trustees from executing a lease thereon for the
purpose contemplated in the one involved, and that if it
should do so the title would become forfeited to the heirs
or devisees of John Bustard, under whom the asylum
derives title, and the muniments of its title are incor-
porated as a part of defendant's answer. The reply put
in issue some of the material allegations of the answer
and set out facts which plaintiffs claim perfected the
title in the asylum by adverse possession. A demurrer
to the reply was overruled, but the court sustained the
one filed by plaintiff to defendant's answer, and it de-

clining to plead further the court rendered judgment compelling it to execute, accept and perform the terms of the lease, and complaining of it this appeal is prosecuted.

The admitted material facts are, that in 1838 John Bustard executed his will and died shortly thereafter, and his will was probated on December 6, 1842. One of the personal representatives named by the testator to carry out and execute the terms of his will was his sister, Margaret Bustard, and it appears that she was the only one of the named three who qualified. The second clause of the will devised to trustees and their successors, for the use and benefit of the Protestant Episcopal Orphan Asylum of Louisville, a described piece of real property, being sixty (60) feet wide and running from Fifth street to Centre street, and required that it be held "for the sole purpose, use and trust of having erected thereon an orphan asylum for the benefit of the Protestant Episcopal Orphan Asylum of Louisville—which building is not to be erected out of my estate." The duly constituted managers of the asylum, for some cause not appearing in the record, did not accept or appropriate the lot devised to the purposes designated in the will, and on March 25, 1846, they exchanged it for the lot now proposed to be leased, which was a part of the testator's estate and the title to which was by his will vested in his executrix. The exchange was effected by duly executed deeds which were delivered and accepted by the parties and in the one from the executrix to the asylum it is provided that the title should be held by the vendee "in the same manner stated for the same purposes, uses and trust that the said sixty (60) feet was held and none other." The lot referred to in the deed was the one devised by the testator to the asylum as hereinbefore stated. The lot which the asylum received in the exchange was thirty-three (33) feet wider than the one devised to it by the testator, and in consideration thereof it paid the executrix $739.20 in addition to conveying to her the lot devised to it by the will.

Whether the asylum had the right to exchange the lot devised to it for another one belonging to the estate of the testator, or whether his executrix had the right to make the exchange (both of which are seriously doubted) are immaterial questions now, since the transaction occurred seventy-five (75) years ago at which time the right

to call it in question accrued to all adult interested parties and it necessarily accrued to all those laboring under legal disability at the time, more than fifteen (15) years ago, and the rights of all interested parties have long since become barred by the statute of limitation.

Counsel for defendant cite and rely on the cases of Grundy v. Neal, 147 Ky. 729; Trustees, Etc. v. Alexander, 20 Ky. L. R. 391; Morrow v. Slaughter, 5 Bush 330; McDaniels v. Watson, 4 Bush 234; Taylor v. Rogers, 130 Ky. 112, and others referred to therein, all of which uphold and apply the equitable doctrine of reverter of the title of the *donor* of property to his heirs or devisees through the operation of a resulting trust when the donee ceases to use it for the purposes stipulated. But, those cases and also those of Wright & Taylor v. County Board of Education, Etc., 151 Ky. 560; Fuqua's Heirs v. Trustees, Etc., 22 Ky. L. R. 744; Lutes, et al. v. L. &. N. R. R. Co., 158 Ky. 259; Carroll County Academy v. Gallatin Academy, 20 Ky. L. R. 824; Easum v. Bohon, 180 Ky. 451, L. R. A. 1918D 1144, and Board of Councilmen of City of Frankfort v. Capitol Hotel Co., 188 Ky. 754, hold that the title will not be forfeited or revert to the heirs or devisees when its conveyor did not *donate* it but received a valuable consideration for the conveyance, unless the language of the instrument, expressly or by *necessary* implication, provides therefor. Those cases furthermore hold that in the absence of such express or necessarily implied language the stipulation will be construed as a *covenant* and not as a *condition subsequent,* and when violated by the vendee will subject him or his vendee (immediate or remote) to an appropriate action by the vendor or his successors in title. What that remedy may be is a question with which we are not now concerned since it is not presented, but the cases referred to uniformly acknowledge the right to some appropriate remedy looking to the enforcement of the covenant. In the cases last referred to, particularly that of Wright and Taylor v. County Board of Education, which case appellee confidently relies on, the question of an enforced specific performance was not involved; the only one there was whether the title holder held the absolute fee simple title or whether it was subject to be forfeited and thereby defeated because of a non-observance of the particular stipulation in the deed or other muniment of title. One may have the absolute fee simple title, as

held in those cases, which he may convey free from the right of any one to forfeit it, yet it may be encumbered with a covenant as to its use, which covenant runs with the land and will subject the title holder, not to a forfeiture of his title but to some other action seeking appropriate relief. The latter question was not involved in the cases relied on by appellee. The question then, for determination, is whether the stipulation in the deed under which plaintiff holds title to the lot in question is a condition subsequent, upon the breach of which the title will be forfeited, or is it only a covenant subjecting the owner of the lot to litigation, and if the latter, is it sufficient to deny the right of specific performance?

Under the principles announced in the cases referred to we think there can be no doubt but that the executrix of the testator for the use and benefit of his estate received a valuable consideration for the lot involved. There was not only the exchange of the devised lot, the title to which, as we have seen, has long since become perfect, but there was also the cash consideration referred to, and since the deed does not expressly or by necessary implication provide for a forfeiture of the title the stipulation therein as to the use of the property must be construed as a covenant and not a condition subsequent, the violation of which would be ground for forfeiture of the title.

Upon the completion of the exchange of the lots, the asylum erected a building on the one it received thereby and operated it for the purpose for which it was organized until 1892 when it purchased other property in another part of the city and constructed thereon a new building, converting its old one into busiess houses, which it has rented for business purposes continuously since then. Upon the abandonment of its old building for the purposes of an asylum and the appropriation of it to a different use it violated the covenant as to the use contained in the deed of the executrix to it and at which time the cause of action of the devisees of John Bustard or their heirs or devisees accrued, since the use of the property from that time on was adverse to the conditions of the covenant and the right of all such parties who were *sui juris* to a remedy therefor became barred fifteen (15) years thereafter. If, however, any of them were infants or otherwise legally disabled their cause of action would be prolonged until fifteen (15) years

from the removal of such disability, and it is therefore manifest that the asylum does not tender to the defendants a wholly unencumbered title, but, on the contrary, it tendered one which is doubtful and liable to involve defendant in litigation. The action for breach of the broken covenant by one laboring under disability at the time it occurred is governed by the provisions of section 2525 of the Kentucky Statutes, and not by the provisions of section 2506 of the Statutes, which latter section applies to an action for the recovery of real property and not to one based upon the breach of a covenant in which the recovery of real property is not sought.

Equity will not decree specific performance of such an encumbered title, since defendant is not required to accept one involved in such doubt, 36 Cyc. 632-641, inclusive, 25 R. C. L. 274, and Lowther-Kaufman Oil & Coal Co. v. Gunnell, 184 Ky. 587. On page 639 of the volume of Cyc. referred to, the text, says: ''A vendee who has a right to a good title can not be forced to take the property when it is subject to covenants or conditions restricting its use.'' A number of supporting cases are found in note 78 to the text, and there does not seem to be any authority to the contrary. Furthermore, while there are some cases and authorities to the contrary, the better rule seems to be that a title acquired by adverse possession will be sufficient to meet the requirements of the rule demanding the tender of a perfect title by plaintiff in the absence of an express contract for a perfect record title. Thus, in the cited volume of Cyc., on page 641, it is said: ''Where the vendor did not expressly contract for a good record title, a title depending upon adverse possession is often so free from doubt that it may be forced upon the purchaser.'' Among the numerous cases cited in support of the text are: Logan v. Bull, 78 Ky. 607, and Watkins v. Pfeiffer, 29 Ky. L. R. 97, which we have examined and find that they truly support the text. We, therefore, think the court was in error in rendering the judgment appealed from, because of the encumbered condition of the title which we have above pointed out; but, it does not necessarily follow that the petition should be dismissed if the parties see proper to pursue the course indicated below.

But, it is insisted that under the doctrine of the case of George T. Stagg Co. v. Frankfort Modes Glass Works, 175 Ky. 330, the misappropriation of the use of the lot

by the asylum by renting it for business purposes instead of maintaining its institution thereon was not sufficient to notify those interested in the enforcement of the covenant contained in the deed of the adverse user, but we do not so construe that opinion. It only follows the universal rule in regard to adverse possession, which is that "the possession must be visible and notorious so as to raise the presumption of notice to everyone that the right of the owner is invaded intentionally with a purpose to assert a title adverse to his." In that case the adverse right claimed was to a subterranean water pipe, and it was held that in the absence of actual knowledge the use was not of that notorious and visible character to raise the presumption of knowledge on the part of the owner of the pipe. But here the abandonment of the use stipulated in the deed was open, visible and notorious and fully met the requirements of the law as to its sufficiency to create presumed notice.

Whatever may be the practice with some of the courts, this one and a number of others hold that in an action for specific performance adverse claimants or those asserting a cloud upon the title may be made parties defendant and their claims litigated in that suit, and if upon final determination the title is cleared, either by adjustment of outstanding claims, or by denying their validity or the right to assert them, the vendee will be compelled to perform the contract. Upon this point the text in the cited volume of Cyc., on page 633, says: "If, however, the defendants or persons interested in the title, other than the vendor, are parties to the suit for specific performance, so that their claim may be settled by the decree therein, the objection can not be raised that the title exposes the vendee to litigation." Kentucky cases supporting the text are the Bull case, *supra*; Early v. Douglas, 110 Ky. 813, and Robinson v. Henning, 9 Ky. L. R. 141. This rule is but following the equitable practice of settling all questions in one action so as to avoid a multiplicity of suits and circuity of action. If, upon a return of the case plaintiffs see proper to make the necessary parties defendant, and it should be determined that their right to relief, growing out of the broken covenant contained in the deed to plaintiffs, is barred by the fifteen (15) years' statute of limitation plaintiffs will be entitled to a decree specifically performing the lease contract.

The other two contentions made by defendant, i. e., that the trustees of the asylum, though possessing the power and authority under its specially enacted charter to sell any of its property, are not authorized to lease it, and that the corporate trustee is disqualified in any event to act as such does not appeal to us as being sound. We think the powers conferred by the charter are broad enough to authorize the trustees to lease any of the property of the asylum for the purpose of obtaining income to be used in carrying out the objects of its creation, and that the trustees need not be natural persons but may be corporations who are authorized to serve in such fiduciary capacities.

Wherefore the judgment is reversed for proceedings consistent with this opinion.