## People's Bank of Harrisville v. Continental Supply Company.

(Decided February 12, 1926.)

### Appeal from Lawrence Circuit Court.

1. Pledges—Pledge Need Not be in Writing—Pledge Must be Accompanied by Delivery of Property Pledged.—A contract of pledge need not be in writing, but, to be valid, especially as to third parties, must be accompanied by delivery to pledgee of property pledged, as pledge cannot be effected by promise or intention.

2. Pledges—Redelivery to Pledgor for Sale and application of Proceeds on Debt or Exchange for Other Property to be Delivered to Pledgee Will Not Destroy Lien.—A temporary redelivery by pledgee to pledgor of property pledged, for purpose of negotiating it and applying proceeds on debt secured, or of exchanging it for other property to be delivered to pledgee, will not destroy latter's lien.

3. Corporations—Pledgee of Undelivered Stock in Pledgor's Possession at Time of Attachment has no Lien Valid Against Attachment Creditor.—Where pledgor had not delivered pledged stock to pledgee, and had it in his pocket, when attachment was levied on it under Civil Code of Practice, section 194, subd. 1, cl. 8, and subdivision 2, pledgee had no lien valid against attachment creditor at such time, in view of Ky. Stats., section 1908, and subsequent delivery of stock to pledgee gave latter no lien superior or equal to that of attaching creditor.

FRED M. VINSON and KIT C. ELSWICK for appellant.

C. L. MILLER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought in the court below on October 14, 1920, by the appellee, Continental Supply Company, a West Virginia corporation, against one J. R. Jones upon and to enforce the payment of an unsatisfied judgment amounting to $518.10, which it recovered against him on August 26, 1918, in an action instituted in the circuit court of Richie county, West Virginia. At the time of instituting the action in the Lawrence circuit court the appellee, by the execution of the required bond, obtained an attachment against the defendant Jones and his property on the grounds authorized by section 194, subsection 8, subdivision 2, Civil Code, which was duly levied upon 83 shares of stock owned by him in the National Drilling Company, a corporation also created by and organized under the laws of West Virginia, but then conducting business in Lawrence county, this state.

About the time of the institution of the appellee, Continental Supply Company's action against Jones in the Lawrence circuit court, the National Drilling Company ceased to operate. The record before us fails to disclose the date of its dissolution, but the briefs of opposing counsel seem to concede that it occurred some time in the month of October, 1920, on the fourteenth day of which month and year the appellee's action was filed and attachment issued. It does, however, appear from the record that upon its ceasing to operate, its property and assets were, by voluntary action of its stockholders, placed in the hands of Fred M. Vinson as receiver or trustee for its liquidation and distribution; and that the trust thus committed to him was subsequently discharged.

This is fully set forth in the answer filed in the case by the National Drilling Company as garnishee, to which in addition to its corporate name appears that of Fred M. Vinson, as its "liquidating trustee." From this answer it also appears that after settling the affairs and all indebtedness of the corporation there was left in the hands of the liquidating trustee in money of the corporation an amount sufficient to pay all owners or share- holders of its stock 75 per centum of the par value thereof, which, as stated in the answer of the garnishee, had all been distributed among and paid to the stockholders in the ratio of the stock held by them, respectively, by the liquidating trustee, except that out of the amount due J. R. Jones on his stock he had withheld the $518.10 and costs attached by the appellee for its debt, which sum was still being held by the garnishee subject to the further orders of the court.

As J. R. Jones, admittedly, owned 83 shares of the National Drilling Company's stock, the par value of which was $2,075.00, and the 75 per centum thereof apportioned to its liquidation by that company's trustee amounted to $1,556.25, after deducting from the latter the sum of $518.10 and costs retained by the garnishee to await the court's decision on the appellee Continental Supply Company's attachment against Jones' stock, there was still left of the amount apportioned to the liquidation of the Jones stock, approximately $1,038.15, which, as appears from the answer of the garnishee, was paid thereon by the liquidating trustee, but whether to Jones or to the appellant bank is not disclosed by the answer.

J. R. Jones, though duly served with a summons, made no defense to the action in the court below. But before the court took any action therein on the appellee's attachment, the appellant, People's Bank of Harrisville, a banking institution incorporated under the laws of West Virginia and conducting its business as such in the town of Harrisville, that state, by an intervening petition filed therein, was made a party defendant to the action and the intervening petition taken as its answer to the appellee's petition. By this pleading the appellee's attachment was attacked and its right to subject the stock of Jones in the National Drilling Company or any part of the proceeds thereof to the payment of its judgment debt resisted, upon the ground that the stock had before the appellee's judgment in the West Virginia court was obtained and before the creation of the debt merged therein been pledged by Jones to it (appellant) to secure a debt it held against him exceeding in amount the value of the stock, and a considerable part of which was yet due and unpaid, which alleged pledging of the stock, it is averred, gave the appellant a prior lien thereon, superior to that obtained by the attachment levy of the appellee, and entitled it to the proceeds of the stock attached by the latter.

The appellee by reply controverted all the material averments of the pleading referred to, and alleged the superiority over that claimed by the appellant of the lien it acquired upon the proceeds of the stock in question by the levy thereon of its attachment. The case was transferred to the equity docket, and after the taking of proof by the appellant, its submission resulted in a judgment by the court dismissing the intervening petition of the appellant, awarding the appellee the recovery of its debt of $518.10, with interest from April 19, 1918, until paid, and costs of the action; also sustaining the appellee's attachment, declaring it entitled to the fund attached in the hands of the garnishee and directing the payment thereof to it by the latter. The appellant, complaining of that judgment, has appealed.

It appears from the pleadings and evidence that on January 4, 1917, J. R. Jones borrowed of the appellant People's Bank of Harrisville, $4,500.00, for which he executed his note payable 90 days thereafter, and to secure its payment he at the same time executed to one Homer Adams, as trustee for the bank, a deed of trust conveying certain real estate, oil leases and "all the oil well drilling tools, supplies and equipment owned by the

said J. R. Jones.'' This deed of trust was never recorded, and it appears from the record that at the time of its execution only a small portion of the oil well drilling tools, supplies and equipment thereby conveyed was in West Virginia, the remainder and larger part of it then being in the state of Tennessee, where Jones was engaged in oil drilling. Moreover, such of the tools, supplies and equipment as were in West Virginia when the deed of trust was executed were, with the consent of the appellant bank, shortly thereafter removed by Jones to the state of Tennessee.

November 5, 1917, about eleven months after his execution of the note and deed of trust mentioned, J. R. Jones and others organized in Tennessee, and under the laws of that state, an oil corporation called ''The Jones Drilling Company,'' to which Jones transferred all the oil well drilling tools, supplies and equipment previously mortgaged by the deed of trust to the appellant, in exchange for two hundred shares of its capital stock. This transaction was admittedly effected with the knowledge and consent of the bank, which, as alleged in its intervening petition, thereupon released its mortgage lien upon the property thus transferred to the Jones Drilling Company and received in lieu thereof as collateral security on the note of Jones the two hundred shares of stock held by the latter in the Jones Drilling Company.

After continuing in business several months the Jones Drilling Company was dissolved and its physical assets distributed among its stockholders, by which act the equipment received by J. R. Jones as his share in the distribution of the property of the Jones Drilling Company in satisfaction, or in lieu of, the two hundred shares of his capital stock therein, he sold and transferred to the National Drilling Company, the West Virginia corporation, conducting business in Lawrence county, Kentucky, in exchange for 83 shares of its capital stock.

This 83 shares of stock in the National Drilling Company owned by Jones was the same attached in the case at bar in the hands of that company for the appellant's debt, and the proceeds of which, to the amount required for that purpose, were subjected by the judgment of the circuit court to the payment of the appellee's debt and the costs of the action.

It appears from the evidence contained in the record, and is admitted by the appellant, that although the 83

shares of stock owned by Jones in the National Drilling
Company were issued by it and received by him August
2, 1920, more than two months before the date of the in-
stitution of the appellee Continental Supply Company's
action and service of its attachment on him (Jones), and
the levy thereof on the stock, which, as previously stated,
was October 14, 1920, he did not deliver the stock to the
appellant, People's Bank of Harrisville, until some time
in December, 1920, four months after it was received by
him and two months after the service and levy of the
attachment, at which time his debt to it had, by successive
payments on and renewals of the note, been reduced from
$4,500.00 to $1,240.00.

It is the contention of the appellant, supported by
the testimony of its cashier and Jones that the 83 shares
of stock of the National Drilling Company it thus received
of Jones was delivered to it in pursuance of an agreement
it made with him at the time of the organization of the
National Drilling Company to the effect that it would
accept it as collateral to secure the payment of Jones'
note held by it, in lieu of the 200 shares of stock in the
Jones Drilling Company it had accepted of him as collat-
eral for a like purpose, following the organization of that
company.

It was, however, admitted by the witnesses named
that this alleged agreement was not set forth in written
form; and while each of them indefinitely stated that the
agreement to substitute the National Drilling Company
stock for that of the Jones Drilling Company as collat-
eral security on the Jones note, was made through an ex-
change of letters between the parties, none of the letters
was introduced in evidence, their loss accounted for, nor
absence explained.

We are provided by the record in this case with three
outstanding facts which, because of their being uncon-
tradicted by anything appearing in the evidence, must
control its decision. They are: (1) That the appellee at
the time of the institution of its action and levy of its
attachment, had no knowledge, or means of knowing, of
the existence of the alleged lien attempted to be asserted
by the appellant upon the 83 shares of stock owned by
Jones in the National Drilling Company. (2) That the
appellant, by reason of its never having acquired the pos-
session of the 83 shares of stock in question before the
levy thereon of the appellee's attachment, had no lien on
same superior to that created by the levy of the latter's

attachment.   (3) That the 83 shares of stock were in the possession of Jones at the time of the issuance and levy of the appellee's attachment and his subsequent delivery of the stock to the appellant created in its behalf no lien on the stock superior, or equal, to that of the appellee.

Undoubtedly a contract of pledge need not be in writing, but to be good in law, especially as to third parties, it must be accompanied with the pledgor's delivery to the pledgee of the thing or property pledged.   The pledging of the property cannot be effected by promise or intention.   Bournes v. Daviess County Bank, 135 Ky. 355; 25 L. R. A. (N. S.) 525; Little v. Berry, 113 S. W. 902.

A temporary redelivery by the pledgee to the pledgor of the property pledged for the purpose of negotiating it and applying the proceeds on the debt secured by the pledge, or of exchanging it for other like property to be substituted therefor by its delivery to the pledgee, will not destroy the latter's lien.   But that rule is not applicable to the case at bar, for the reason that the stock here involved had never been delivered to the alleged pledgee before the levy of the appellee's attachment, but was at the time of the levy thereof in the pocket of the pledgor. As said in Bournes v. Daviess County Bank, *supra*, in the discussion of the question under consideration:

"A pledge of personal property can only be created by actual or symbolic delivery of the property by the pledgor to the pledgee.   If the property remain in the possession and under the control of the pledgor, the transaction falls within the statute (Ky. Stats., section 1908) and is void as to creditors and purchasers.   A bank has no greater rights than an individual, and to hold that an individual can create pocket liens upon his property in such a way as this that are valid against purchasers and creditors would be to nullify the statute and entirely defeat the legislative purpose in its enactment.''

Whatever may have been the rights of the appellant bank as against its debtor Jones, we think it apparent that the bank had no lien upon the latter's stock in the National Drilling Company at the time the attachment of the appellee was levied.   We therefore concur in the conclusion arrived at by the circuit court.   Wherefore, the judgment is affirmed.