## Kentucky By-Products Coal Company v. Ward.

(Decided March 18, 1932.)

WM. R. McCOY for appellant.

G. WELLS and A. J. KIRK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On May 26, 1923, the appellee and plaintiff below, Melissa Ward, entered into a written contract with the appellant and defendant below, Kentucky By-Products Coal Company, whereby she agreed to sell to it all the minerals under a tract of land in Martin county claimed to be owned by plaintiff, except oil and gas, for the consideration of $10 per acre for the entire tract estimated to contain 400 acres. One hundred and fifty dollars was paid in cash and the remainder to be paid in 12 months, but not before a survey was made and an abstract of title furnished, both of which were to be procured by plaintiff. After the expiration of 12 months, plaintiff filed this action in the Martin circuit court against defendant to recover of it the balance of the purchase money, but at that time she had neither procured the survey nor the abstract of title, and sought to excuse such failures on her part by averring that defendant had so procured them, and was therefore in possession of the facts, which were: That plaintiff (as she also alleged) was the owner of, and could convey a perfect title to the purchased minerals. Later plaintiff herself procured an abstract of her title, as well as a survey of the land, which was found to contain 379.45 acres, and she filed an amended petition alleging such facts, and filed as exhibits thereto the abstract and survey so procured by her. Defendant denied that plaintiff possessed a perfect title, but did not specifically point out its defects, except it was alleged that in a suit theretofore pending in the Martin circuit court, the style of which was Crum et al. v. Ward et al., there were four infant plaintiffs, and that, although the court de-

cided that action in favor of the instant plaintiff and dismissed the petition of plaintiffs therein asserting an adverse title to a portion of the involved land, the infant plaintiffs, under section 745 of the Civil Code of Practice, could prosecute an appeal from that judgment to this court at any time within 1 year after they arrived at 21 years of age, and that such right destroyed the marketability of plaintiff's title, and created such a cloud thereon as to entitle defendant to decline to accept it and pay for it.

In reply to that paragraph of the answer, plaintiff averred that among her defenses in that action was the one of a prescriptive title acquired by defendants therein by adverse possession, and which the evidence sustained, and the court so determined in dismissing the petition in that case. We have been unable to find anywhere in the record where those averments were controverted. Upon final submission of this case, the court sustained the prayer of the petition as amended, and rendered judgment against defendant for $3,894.50, to reverse which defendant prosecutes this appeal.

The facts in this case are almost identical with those appearing in the case of Kentucky By-Products Coal Co. v. Wells et ux., this day decided, and which is reported in 243 Ky. 89, 47 S. W. (2nd) 729. The defense, as based upon the remote possibility of a successful appeal by the infant defendants in the Crum Case, is identical with the same one made in the Wells case, since in the Crum Case plaintiffs therein asserted title to an undivided share in a large boundary of land which included the tract claimed to be owned by Wells, as well as the one claimed to be owned by plaintiff in this case. Therefore the disposition of that defense as made by us in the Wells opinion is controlling here. We held therein that it was insufficient to impair the title so as to justify defendant in declining to accept it. We will not repeat the reasoning employed by us in that opinion in arriving at such conclusion, but will refer the reader to it for that information.

The court in this case in rendering its judgment did not specify the grounds therefor, and which authorizes us to presume that he found either (a) that plaintiff had a complete record title, or (b) that she possessed a prescriptive title obtained by the requisite adverse possession. Our resume, supra, of the pleadings fully supports

the latter conclusion, and which is sufficient in and of itself to authorize the judgment appealed from, since it is the settled doctrine in this jurisdiction that "title acquired by adverse possession is such as purchaser may be required to accept under contract to convey by deed of general warranty." Buckhorn Coal & Lumber Co. v. Lewis, 232 Ky. 415, 23 S. W. (2d) 596; National Finance Corporation v. Robinson, 193 Ky. 649, 237 S. W. 418; Watkins v. Pfeiffer, 92 S. W. 562, 29 Ky. Law Rep. 97; Carter v. Crady's Admr., 1 Ky. Op. 75, and other cases listed in volume 18 of the Kentucky Digest, published by West Publishing Company, p. 588, Sec. 131. It is therefore not necessay to determine whether plaintiff established a record title from the commonwealth.

But, if it were otherwise, and we should hold that, in order to sustain the judgment, the proof in the case should show a record title from the commonwealth to plaintiff, we then have a finding by the chancellor that such proof was made, or we have the right to presume that the court found that it was so made, in the absence of a specification of the ground upon which the judgment was rendered. We have examined the abstract of plaintiff's title running back to the commonwealth, and it is our conclusion that the testimony is sufficient to sustain it, or to so convince the trial court, and its judgment to that effect is so much supported by the testimony as to not authorize us to interfere with it under the prevailing rule as to finding of fact by a chancellor.

But it is argued that the contract sought to be enforced was executed by others in conjunction with plaintiff, and they are not made parties to the action. The record, however, does not sustain that contention. On the contrary, the contract upon which the action is founded was executed on the day above mentioned by plaintiff alone, and in which it is stipulated that the tract of land, therein generally described, contains "400 acres more or less." The record, however, does disclose that another similar contract made by plaintiff jointly with others was executed along about the same time; but this action is not based on it. The other joint contractors, who, it is insisted, should have been made parties, and who joined in the contract of sale, as contended for by counsel for defendant, were A. H. Ward and his wife, Janie Ward, but that contract was an entirely separate one from the one sued on, and involved only 73 acres of land. It is also insisted that one Hanson Ward had

purchased from plaintiff a part of the tract of land de-, scribed in the contract sued on, and that so much of the tract as was so purchased by him was an outstanding title, destroying plaintiff's right to convey the involved mineral under it. But an examination of that conveyance discloses that in the deed executed to him plaintiff expressly reserved the minerals of the nature and kind agreed to be conveyed to defendant in the contract sued on, and which, as we conclude, successfully answers defendant's argument to the contrary.

Neither is the possibility that some one who was not a party to the action in which plaintiff was adjudged to possess a prescriptive title might hereafter assert an adverse title to the involved land sufficient to defeat the proven prescriptive title in plaintiff so as to satisfy the requirements of the law in such case under this court's opinions, supra. The possibility of some one asserting. an adverse title is never absolutely preventable, and covenants for a perfect title require no such guaranty. They do not obligate the covenantor to guarantee that no such action will ever be filed, but only that, if filed, the plaintiff therein will be unsuccessful, and, if the latter covenant should be broken by a future successful attack upon the title agreed to be conveyed, a resort to the warranty in the deed may be had. A survey of the entire record convinces us that the court properly held defendant liable for the balance of the purchase money.

But in rendering that judgment a clerical error was committed, in that the judgment, as we have seen, was for the sum of $3,894.50, based upon an erroneous finding that the involved land contained 389.45 acres, whereas it actually contained only 379.45 acres, which at $10 per acre, the contract price to be paid for the minerals, would be $3,794.50. From that should be deducted the $150 paid at the time, leaving a balance of $3,644.50, the true amount for which the judgment should have been rendered. The court will therefore, upon a return of the case, correct its judgment so as to conform to that amount, and which error may be so corrected without requiring a reversal of the judgment by us.

Wherefore the judgment is affirmed.