## Kentucky By-Products Coal Company v. Wells et ux.

(Decided March 18, 1932.)

90

WM. R. McCOY for appellant.

G. WELLS for appellees.

Opinion of the Court by Judge Thomas—Affirming.

On May 26, 1923, the appellees and plaintiffs below, R. M. Wells and wife (the latter only for the purpose of relinquishing her potential right of dower), sold, by written contract duly executed, all of the coal and other minerals under a tract of land situated in Martin county which was then owned by plaintiff, R. M. Wells, to appellant and defendant below, Kentucky By-Products Coal Company. The consideration paid and agreed to be paid by defendant was $10 per acre, $50 of which was paid at the time, and the balance was to be paid when and after the land was surveyed and the number of acres ascertained and an abstract of title made and furnished to defendant, but not earlier than twelve months from the date of the contract. Plaintiff also agreed therein, upon the payment of the balance of the consideration in accordance with its terms, to execute a general warranty deed to the defendant for the minerals purchased by it. Prior to the making of the contract, there was a judgment rendered in an equity action in the Martin circuit court of W. R. Crum et al. v. Melissa Ward et al., to which action plaintiff, R. M. Wells was a party defendant, and the plaintiffs therein were the heirs of Eli and Clementine Crum, who alleged that they jointly owned a half undivided interest in and to the tract of land containing the minerals here involved. No effort was made while that action was pending to complete the sale of the minerals to defendant, and the status continued until after that action was disposed of. The final judgment therein

dismissed the petition of W. R. Crum et al., and adjudged that plaintiff herein, R. W. Wells, was the owner of the tract of land containing the minerals that he and his wife agreed to convey by the written contract, supra.

Some time after that judgment was rendered in the Crum case this action was filed by plaintiffs herein against defendant to recover the balance of the purchase money due for the minerals agreed to be purchased by it, and to compel it to accept a deed executed pursuant to the contract of sale. The answer denied plaintiffs' ability to convey a perfect title in accordance with the obligations assumed in the written contract of sale, and also averred that they had not furnished an abstract of the title as they had therein agreed to do. The pleadings finally simmered down to the two issues: (1) That plaintiff R. M. Wells was unable to show a title traceable to the commonwealth, and (2) that, if mistaken in issue (1), then the title to the purchased mineral was defective and unmarketable because one of the Crum heirs who was a plaintiff in the Crum case, supra, died pending that litigation, leaving four infant heirs who, by appropriate order of revivor, were substituted as plaintiffs in the place of their deceased parent, and that they were yet infants and had the right to appeal from the judgment dismissing that petition (under the provisions of section 745 of our Civil Code of Practice) at any time during the year following their arrival at the age of 21 years, and which would not expire for many years hence, or at least with some of them, and that the possibility of all or some of them exercising such right, coupled with the further possibility that a reversal of the judgment in that case might be obtained, created such an incumbrance upon, or defect in, the title as to render it unmarketable and such as defendant was not compelled to accept under the terms of its written contract of purchase. The court determined both issues against defendant, and rendered judgment in accordance with the prayer of plaintiffs' petition, to reverse which defendant prosecutes this appeal. It will be observed that issue (1) presents solely a question of fact, while issue (2) presents only a question of law, and they will be disposed of in the order named.

The abstract of plaintiffs' title appearing in the record, the correctness of which we construe the testimony to establish, shows that the particular 52 acres involved in this action is a part of a patent issued by the

commonwealth of Kentucky to John Mullett on August 5, 1857. He, it appears, then owned or thereafter acquired other land than that covered by his 1857 patent, and on March 30, 1865, he sold 600 acres to Ruben D. Wolfe, which included the 52 acres here involved. On September 11, 1873, Wolfe and wife sold it to Jonathan Ward. The latter failed to pay for it, and it was sold at a judicial sale to satisfy the balance of the purchase money, when it was purchased by Moses Wells and Eli Crum. Wells later sold his interest therein to Eli Crum and his wife, Clementine Crum, jointly, and which vested the wife with a one-fourth undivided interest in the land conveyed by that deed, including the 52 acres here involved. Mrs. Crum died many years ago, but either before or after her death her husband, Eli Crum, on February 2, 1901, conveyed a tract of 125 acres to Martela Ramey, which embraced the 52 acres involved, and the vendee therein on November 12, 1908 (who in the meantime had married a Mr. Porter) conveyed the tract to plaintiff, R. M. Wells. In addition thereto it appears in the record that it was shown in the Crum case, supra, that plaintiff and those under whom he claims had acquired title to the 52 acres of land herein involved by adverse possession for more than fifteen years of continuous adverse holding, sufficient to invest him with a prescriptive title.

The trial court found as a fact that plaintiffs' title was a marketable one and such as defendant was compelled to accept under its contract of purchase. If there was more doubt upon that issue than what the record discloses, under a well-established rule in this jurisdiction, we would be compelled to accept that finding of the chancellor. However, we are convinced of the correctness of it, from which it results that the trial court's judgment upon that issue of fact is approved.

From what has been said it will be observed that the legal question involved in issue (2) is: Whether the mere right of the four infant plaintiffs in the case of Crum et al. v. Ward et al., supra, to appeal from the judgment against them in that case until one year after they become of age, plus the possibility of a reversal of the judgment if they should exercise that right, is alone sufficient to defeat the marketability of plaintiffs' title so as to justify defendant in refusing to accept it and pay the consideration?

Preliminary to answering that question, it becomes necessary to ascertain the status of the declared law applicable to the question. To begin with, it may be stated as a correct principle of law that "a marketable title (so as to compel a vendee to accept it under an agreement to purchase) may be based on a judicial sale or decree quieting the title, provided the proceedings were regular and all persons in interest were parties thereto so as to be bound thereby." 27 R. C. L. 498, sec. 219. The text is supported by the cases of Buchan v. German American Land Company, 180 Iowa, 911, 164 N. W. 119, L. R. A. 1918A, 84; Justice v. Button, 89 Neb. 367, 131 N. W. 736, 38 L. R. A. (N. S.) 1; Rossbach v. Micks, 89 Neb. 821, 132 N. W. 526, 42 L. R. A. (N. S.) 444; Van Gundy v. Shewey, a Kansas case reported in 90 Kan. 253, 133 P. 720, 47 L. R. A. (N. S.) 645, and Acme Realty Co. v. Schinasi, 215 N. Y. 495, 109 N. E. 577, L. R. A. 1916A, 1176. We have been unable to find any text or opinion to the contrary, and the principle contained therein appears to be both sound and reasonable. That being true, plaintiff exhibited in this case at least a prima facie merchantable or marketable title, and one which defendant was compelled to accept under the terms of its contract, even as to its weakest link, which was the judgment in the case of Crum v. Ward, and the only remaining question is: Whether the probability of overcoming that prima facie title through a possible appeal by the infant plaintiffs in that case, followed by a possible reversal of the judgment rendered therein, is sufficient to overturn such prima facie showing?

The text in R. C. L. supra, 499, and a part of the same section in discussing that question, says:

"The mere possibility, however, that such a decree, acquiesced in for a considerable time, may be opened or an appeal taken therefrom will not be given such effect in the absence of any ground to suppose the privilege will be of avail to the party entitled to take advantage of it; to constitute an effective objection it must appear that there is at least a probability that the privilege will be asserted and will result in defeating the decree. And it has been held that the fact that one of the conveyances in a chain of title is by executors acting under power of sale in a will, and that the probate of this will

might be annulled and the letters of administration revoked, does not render the title unmarketable, in the absence of proof (and, of course, in the absence of pleading) of any facts rendering it in any degree probable that the will is in any respect invalid, or that there is any probability that it will ever be made the subject of a contest.''

Supporting that text is the annotation to the case of Justice v. Button, supra, in 38 L. R. A. (N. S.), on pages 15 and 16, in which the case of Logan v. Bull. 78 Ky. 607, is cited in support of the statement that such a remote possibility is not sufficient to overcome the prima facie correctness of the judgment adverse to those who might possibly appeal therefrom, and in which it was held that they possessed no adverse title. In the Logan case the judgment, from which infant parties might possibly appeal, was rendered in a partition proceeding, and the same insistence was made therein as is here made. In denying its effect to impair the marketability of the title there involved, this court said:

"This judgment of partition was rendered in the year 1864, and the period of near 14 years having elapsed since that judgment, it is scarcely probable that the partition would or could be disturbed. How old the children were when the judgment was rendered does not appear, and, under the circumstances, the bare possibility that an appeal may be taken, and, when taken, the judgment reversed, and when reversed, that the partition may be shown to be unequal, and for that reason set aside, will not authorize a rescission at the instance of the vendee or prevent a specific execution at the instance of the vendor. Similar objections might be made in almost every case where a judicial proceeding is relied on for the purpose of transmitting the title.''

The facts of this case are analogous in principle to those involved in that one, and the inserted excerpt from that opinion is directly applicable here. If defendant had pointed out in any pleading any error, or any ruling of doubtful propriety, affecting the judgment in the case of Crum v. Ward so as to create a probable doubt as to its soundness, a different case would be presented, since in that event the attack so made on it might be sufficient to overcome the prima facie presumption in its favor.

But, in the absence of some such attack, the presumption that it was properly rendered will not be overcome by the bare possibility of an exercise of the right of appeal by the infant plaintiffs, and to be followed by their probable success in reversing the judgment.

That such a remote possibility, as we have here, is not sufficient to create a cloud upon the tendered title so as to afford a valid defense to an action for specific performance, was also determined by this court in the two comparatively recent cases of Duncan v. Glore, 189 Ky. 132, 224 S. W. 678, 680, and Wolverton v. Baynham, 226 Ky. 214, 10 S. W. (2d) 837, 840. In the Duncan case an heir to the involved land had been absent, and unheard of for more than fifty years. A chain in the tendered title was a decretal sale rendered in an action to settle the estate of the ancestor of the absent heir, and in which all the facts relating to her and her absence were presented and the presumption of her death under our statute, as well as under the common law, was adjudged, although she was not made a party to that action, and was not in any manner brought into the case. Facts equally potent and as possibly remotely affecting the tendered title were involved in the Wolverton case, and in each of them it was held that the purchaser "will not be permitted to object to a title on account of a bare possibility that it will prove defective." See also, Elliott on Contracts, vol. 3, sec. 2332, and 36 Cyc. 633. We therefore conclude that the trial court properly disallowed the defenses interposed and also properly rendered judgment in favor of plaintiffs.

Wherefore it is affirmed.