## Martin v. St. Matthews Produce Exchange

(Decided June 19, 1936.)

DODD & DODD for appellant.

HARDIN H. HERR and SHACKELFORD MILLER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

In September, 1932, the appellant, W. L. Martin sued the appellees, St. Matthews Produce Exchange and G. R. Gorbandt, setting up the lease of his farm to Gorbandt for a term of years, including 1931 and 1932, in consideration of $1,500 annual rental to be paid during August of each year. We abridge further allegations, viz.: Gorbandt was indebted to him for such rent for the years 1931 and 1932. In lieu of an attachment and distress being levied on the crop, the tenant had by agreement delivered the 1932 potato crop, upon which the plaintiff had a lien, to the St. Matthews Produce Exchange, the proceeds of sale to be paid plaintiff when and as sold by it as Gorbandt's agent. The exchange had delivered tickets or warehouse receipts to Gorbandt, showing delivery to it of 1,520 barrels of potatoes, which receipts had been turned over to the plaintiff. The exchange had been notified of the existence of plaintiff's lien and had accepted the potatoes with knowledge thereof. It had, however, refused to account for the proceeds either to the plaintiff or Gorbandt. Asserting his rent lien as prior and superior to all other liens, and charging that the exchange was threatening either to sell and dispose of the potatoes or make way with the proceeds by paying them to Gorbandt, the plaintiff asked an accounting and an injunction, together with a judgment for $1,500, with interest from September 1, 1931. This was the suit for the 1931 rent and to enforce a lien claimed on the 1932 crop.

Gorbandt answered and admitted the allegations of the petition. King intervened, claiming $252.05 for hauling the potatoes, for which he had been given an order or assignment of the proceeds by Martin and Gorbandt. The exchange traversed the material allegations of the petition. It also set up in the pleadings that, prior to March 1, 1932, it had sold and de-

livered to Gorbandt fertilizer and seed potatoes for the crop involved, and that Gorbandt had orally agreed to deliver the same to his codefendant and allow it to sell the crop and retain enough from the proceeds to pay all sums due it. Further allegations were: On March 1, 1932, he had executed and delivered a promissory note to the exchange for $574.15, covering his debt at that time. It had later sold other merchandise under an implied promise to pay, as was shown by statement filed. The potatoes had been soldf or $1,597.61. After deducting Gorbandt's indebtedness to it and the commission for selling, the exchange stated that it had in its hands $609.96 remaining, which it held subject to the orders of the court. A reply completed the issues.

Pending the action, the plaintiff, Martin, collected $1,500 covering the rent due for the year 1932. This was independent of the crop involved in the suit.

The proof was that in 1931 rent had been covered by Gorbandt's promissory note. While the 1932 crop of potatoes was being harvested, Martin was insisting on payment of the rent, and Gorbandt agreed to turn over the receipts or tickets for the potatoes to Martin on the two years' rent. Martin had several conversations with the manager of the exchange, endeavoring, as he says, to ascertain the quantity being delivered, and finally was told that Gorbandt owed the exchange, and that the debt would first be taken out of the proceeds. The manager testified he received no notice of any lien claimed by Martin until August 10, 1932, which was during the delivery. The gross receipts for 307,105 pounds of potatoes were $1,497.61. Deducting Gorbandt's debt and the commissions, there was left $609.96. While the suit was pending, $555.60 of this by agreement had been paid to King and the Secretary of Agriculture on a mortgage, leaving a balance of $54.36. This balance was adjudged to be paid Martin, but by error the judgment called for $35.81.

Martin appeals from the judgment, insisting he was entitled to recover the gross proceeds, less the sums agreed to be paid to the other two claimants. The exchange cross-appeals from so much of the judgment as required it to pay the costs of the action.

The trial court was of the opinion that each of the

parties had secret equitable liens on the crop, and that the lien of the exchange was prior in time and must therefore prevail. We cannot see any lien for either party. Martin had no landlord's lien, for his 1932 rent was paid before judgment. Section 2317 of the Statutes gives such a lien on produce of the farm or premises rented, "but such lien shall not be for more than one year's rent due or to become due, nor for any rent which has been due for more than eleven months. And if any such property be removed openly from the leased premises, and without fraudulent intent, and not returned, the landlord shall have a superior lien on the property so removed for fifteen days from the date of its removal, and may enforce his lien against the property wherever found." The 1931 crop of potatoes was not involved. While eleven months had not expired, whatever lien the landlord had was lost when he suffered the property to be removed from the premises long before. The agreement of Gorbandt to turn over the 1932 potato crop toh im did not constitute a lien. 21 R. C. L. 642; Little v. Berry (Ky.) 113 S. W. 902; People's Bank v. Continental Supply Co., 213 Ky. 44, 280 S. W. 458. There was no delivery. Cf. Mason & Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833. The only lien he could possibly have had was the pledge of these potatoes constructively delivered of the delivery of the receipts. 21 R. C. L: 644; Ferguson v. Northern Bank, 77 Ky. (14 Bush) 555, 29 Am. Rep. 418. But that was only for the net amounts they represented. There had been previously an actual delivery of the commodity by the owner to his other creditor.

The exchange had no lien, but only a verbal promise made before the crop was planted that it would have an opportunity to collect its debt. When it received the potatoes for sale and sold them, the condition was simply that it became indebted to Gorbandt. It had the right then to deduct his debt to it and account for the difference. So, whatever right Martin secured by the delivery of the receipts, it was only the right and interest which the pledgor, Gorbandt, had. 49 C. J. 921. This was the right to collect the difference in the accounts. The judgment gives the pledgee that.

The appellant maintains that the exchange is a

warehouseman and the receipts are warehouse receipts. Section 4768 of the Statutes defines a warehouseman as •one who shall receive the commodities enumerated or any kind of personal property "in store, or undertake to receive or take care of the same." The receipts of a warehouseman are negotiable (section 4770), "and if there be a lien on the property, then the character and extent of the lien shall be fully set forth and explained in the receipt or voucher." Section 4772, Kentucky Statutes. The point is made that the receipts for the potatoes are to be so regarded, and, in the absence of a statement of its lien indorsed on the receipts, the exchange could claim none. Both the pleadings and proof show that the exchange was in the instant case not a warehouseman. It received the goods for sale as an agent and not for storage. The several receipts were simply acknowledgements that certain quantities of potatoes had been received from Gorbandt; no purpose of their receipt or disposition as by redelivery being indicated on them. The authorities cited, therefore, have no application.

The error of $18.55 in the judgment, being a clerical misprision, may be corrected without a reversal. Kentucky By-Products Coal Co. v. Ward, 243 Ky. 95, 47 S. W. (2d) 732.

On the cross-appeal, it is observed that the defendant made no tender of the balance of the money in its hands and did not offer to confess judgment for that sum. It suffered the plaintiff to recover a judgment against it, and therefore is liable for the costs of the action. Section 889, Kentucky Statutes.

Wherefore the judgment is affirmed on both the original and cross appeal.