## Klaproth et al. v. Tanner.

November 12, 1946.

Charles A. Pepper for appellants.

Coleman & White, and George O. Eldred for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

In 1931, the appellee acquired 51 shares of the capital stock of the Cumberland Manufacturing Company. In 1944, he pledged this stock to Rufus Lisle to secure the payment of a note in the sum of $4000. When Lisle demanded payment of this note it was arranged that the stock would be released upon the payment of $3000. Tanner claims he borrowed $3000 from the appellant Klaproth and pledged the 51 shares of stock as security for this debt. At Tanner's direction Lisle forwarded the certificates for the 51 shares of stock to Klap-

roth on March 14, 1945, with a draft attached for $3000. Attached to the certificates were assignments in blank executed by Lisle. Klaproth paid the draft on March 16, 1945, and in April presented the certificates to the corporation and had new certificates issued to himself and his wife. Klaproth claims that he purchased this stock outright and at no time loaned any money to Tanner.

The issue is whether Klaproth is a pledgee or the owner of these 51 shares.

Tanner testified that as early as December 1944, he discussed a loan with Klaproth, and says that Klaproth knew at that time that Lisle held the 51 shares of stock as collateral and that it was necessary for Tanner to borrow the money to repay Lisle; that when Lisle wanted his money Tanner notified Klaproth that Lisle would release the stock upon the payment of $3000 and Klaproth agreed to lend Tanner the $3000 with the 51 shares of stock as collateral.

Lisle's testimony shows that he never, at any time, claimed to be the owner of this stock, and always recognized that he was merely a pledgee. Klaproth insists that he purchased this stock from Lisle, but says that Tanner made all the arrangements and was acting for him. He admits he knew Lisle held the stock as collateral.

There is no testimony either from Tanner or Lisle that any arrangements were made between them that Lisle sell the stock to Klaproth. Lisle's testimony is to the effect that he was merely assigning to Klaproth the interest he had in the stock, which was that of a pledgee.

When Tanner tendered Klaproth the amount of his debt and demanded the return of the stock, Klaproth refused payment, whereupon this action was instituted.

It is of interest to note that there are outstanding only 206 shares of the capital stock of the Cumberland Manufacturing Company. Prior to the transaction with Tanner, Klaproth and his wife owned 112 shares. Therefore the acquisition of the 51 shares by Klaproth would give him control of this company. Also, we think it material that on March 19, 1945, Klaproth mailed to Tanner a copy of the last audit of the company. This was three

days after he had paid the draft and acquired possession of Tanner's certificates.

The chancellor has favored us with a very helpful memorandum opinion in which he reviews the evidence and points out that at the time Klaproth paid the draft on March 16, 1945, he knew that the certificates were not owned by Lisle but only pledged to him, and that when Lisle's debt was satisfied his interest in the stock was extinguished. It is also pointed out that if Klaproth had acquired the ownership of Tanner's 51 shares on March 16, 1945, there would be no reason for Tanner to be interested in a copy of an audit of the company which was furnished three days later.

The chancellor concludes that the motive behind Klaproth's efforts to obtain the stock was his desire to obtain control of the corporation. This accounts for the fact that the $3000 involved in the transaction was more than the actual book value of the stock, which was approximately $51 per share. The chancellor held Tanner to be the owner of the 51 shares of stock and the judgment directs that it be returned to him upon payment of the amount due Klaproth.

For the appellants it is argued that Tanner failed to sustain the burden of proof. As a basis for this contention it is urged that the testimony of Tanner with reference to sending Klaproth his promissory note with a letter is inadmissible. Tanner did fail to testify that he addressed the letter to Klaproth or that he put any postage on it or placed his return address on the envelope. It may be pointed out, however, that the memorandum opinion of the chancellor indicates that reliance is not placed upon this particular testimony. Certainly the other evidence amply sustains the judgment, which obviates the necessity of passing upon this point.

It is well settled that a pledge need not be in writing to be valid. People's Bank, Harrisville v. Continental Supply Co., 213 Ky. 44, 280 S. W. 458; Mason & Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833.

After considering the competent evidence we are of the opinion that the weight of the testimony is in favor of the appellee. It follows that the judgment below is correct and it is accordingly affirmed.